**HISAO MURATA v. ACHESON, Secretary of State.**

**Civ. No. 1011.**

United States District Court, Hawaii.

Sept. 12, 1951.

Katsuro Miho and Fong, Miho & Choy, Honolulu, T. H., A. L. Wirin, Los Angeles, Cal., for plaintiff.

Howard K. Hoddick, Acting U. S. Atty. Dist. of Hawaii, Honolulu, T. H., for defendant.

McLAUGHLIN, District Judge.

This is a companion case, under 8 U.S. C.A. § 903, to the Okimura case, D.C., 99 F.Supp. 587, also decided this day.

Findings of Fact.

The following are found to be the facts:

1. Murata was born in Hawaii, United States of America, and became at birth a dual citizen—that is, he acquired United States citizenship by birth in this country and Japanese nationality under the Japanese law of blood.

2. Having been graduated from a public high school in Hawaii, in 1940, plaintiff went on a United States passport to Japan, intending to remain there a year to study, at his father's request, Japanese.

3. Shortly before the Japanese attack upon the United States at Pearl Harbor, plaintiff registered with the United States Consul at Kobe, Japan, and advised the Consul that he intended to enroll in Hosei University and to pursue a three-year course. The Consul registered plaintiff as a student, and renewed his passport for but 90 days.

4. After December 8, 1941, plaintiff quit Hosei University. In so doing he was motivated by the war, in that had he stayed in the university he would have become a non-commissioned officer in the Japanese Army, and also because of his displeasure of the attack made upon his relatives in Hawaii, United States of America.

5. Upon leaving the university, plaintiff lived at Yamaguchi with an uncle. His registration with the Japanese police was accordingly changed. At no time after December 8, 1941, was he ever questioned or bothered by either the military or civil police on account of his United States citizenship.

6. At least after entering Hosei University plaintiff knew of the Japanese Military Conscription law.

7. In March 1943, plaintiff got his final draft notice, was examined in April, and inducted in December, 1943. Plaintiff remained in the Japanese Army until Japan surrendered.

8. Plaintiff found life in the Japanese Army unpleasant because (a) he failed at intercepting enemy messages for the Japanese Army and so was suspect and assigned to hard labor carrying rice bags at Hankow Headquarters; and (b) he was unpopular with the officers and soldiers because he refused to be subservient and because he was known to have been born in Hawaii and to have been in the R.O.T.C. For refusing to do a corporal's washing, plaintiff was once beaten by the corporal with a boot, and almost nightly plaintiff was beaten up because of his birth in the United States.

9. Plaintiff entered the Japanese Army as a First Class Private and was discharged as a Superior Private.

10. Plaintiff did not resist induction into the Japanese Army because he feared the "Kempei" or military police, who he believed would forcibly take a draft dodger and mistreat or kill him and/or his relatives. Fear of imprisonment for violation of the conscription law was secondary to fear of the military police.

11. When Japan surrendered, plaintiff went to China with his uncle, and at Shanghai applied for a United States passport.

12. Plaintiff admits that he lied to the Consul in that he told him he was in the Japanese Army but a short time rather than two and a half years. His reason for telling a lie was that he believed in error that such would facilitate his return home to see his sick father, whose only son he is, and also because he wished to get out of China before another war developed.

13. Plaintiff's passport application was denied at Shanghai due to his service in the Japanese Army.

14. Thereupon plaintiff returned to Japan, and worked as an interpreter for the British Occupation Forces.

15. In 1949 at Kobe plaintiff re-applied for a United States passport. Again he admittedly lied concerning his service in the Japanese Army. Finally in March, 1950, he decided to tell the Consul the truth. His application was denied, due to aforesaid military service, and a certificate of loss of nationality was issued. 8 U.S.C.A. § 901.

16. At the hearing before this Court plaintiff asserted first that he was only a United States citizen but later in tears admitted that he was also a subject of Japan.

### Conclusion of Law.

 The plaintiff is entitled to the declaration of United States citizenship prayed for because Section 801(c) of Title 8, United States Code Annotated, is unconstitutional.

### Opinion.

For the reasons indicated in Okimura v. Acheson, No. 1027, decided this day, the petition is granted.