**HISAO MURATA v. ACHESON, Secretary of State.**

**Civ. No. 1011.**

United States District Court
D. Hawaii.

Oct. 6, 1952 and April 14, 1953.

Fong, Miho, Choy & Chuck, Honolulu, Hawaii, A. L. Wirin and Fred Okrand, Los Angeles, Cal., for plaintiff.

A. William Barlow, U. S. Atty., District of Hawaii, and Winston C. Ingman, Asst. U. S. Atty., District of Hawaii, Honolulu, Hawaii, for defendant.

McLAUGHLIN, Chief Judge.

This case was earlier reported in D.C., 99 F.Supp. 591.

As in the companion case of Kiyokura Okimura v. Acheson, D.C.1951, 99 F.Supp. 587, the earlier decision held unconstitutional Section 801(c) of Title 8 United States Code Annotated. Upon appeal, the Supreme Court vacated the judgment and remanded the case for more specific findings as to the circumstances surrounding the plaintiff's service in the Japanese Army and the reasonable inferences to be drawn therefrom. Acheson v. Hisao Murata, 1952, 342 U.S. 900, 72 S.Ct. 294, 96 L.Ed. 674.

In accordance with the Supreme Court's mandate, this Court has made further specific findings of fact and conclusions of law, upon which a new judgment has been entered in favor of the plaintiff, Hisao Murata. These findings of fact and conclusions of law, filed on October 6, 1952, are made a part hereof.

Findings of Fact upon Remand from United States Supreme Court.

1. The plaintiff was born in Hawaii, United States of America, and became at birth a dual citizen—that is, he acquired United States citizenship by birth in this country and Japanese nationality under the Japanese law of blood.

2. Having been graduated from a public high school in Hawaii, in 1940, plaintiff went on a United States passport to Japan, intending to remain there a year to study, at his father's request, Japanese.

3. Shortly before the Japanese attack upon the United States at Pearl Harbor, plaintiff registered with the United States Consul at Kobe, Japan, and advised the Consul that he intended to enroll in Hosei University and to pursue a three-year course. The Consul registered plaintiff as

a student, and renewed his passport for but 90 days.

4. After December 8, 1941, plaintiff quit Hosei University. In so doing he was motivated by the war, in that had he stayed in the university he would have become a non-commissioned officer in the Japanese Army, and also because of his displeasure of the attack made upon his relatives in Hawaii, United States of America.

5. Upon leaving the university, plaintiff lived at Yamaguchi with an uncle. His registration with the Japanese police was accordingly changed. At no time after December 8, 1941, was he ever questioned or bothered by either the military or civil police on account of his United States citizenship.

6. At least after entering Hosei University in March 1941, plaintiff knew of the Japanese Military Conscription law, but voluntarily remained in Japan.

7. In March 1943, plaintiff got his final draft notice from the Japanese Government, with which he complied without resistance. He was examined in April, and inducted in December 1943. Plaintiff remained in the Japanese Army until Japan surrendered.

8. Plaintiff found life in the Japanese Army unpleasant because (a) he failed at intercepting enemy messages for the Japanese Army and so was suspect and assigned to hard labor carrying rice bags at Raakow Headquarters; and (b) he was unpopular with the officers and soldiers because he refused to be subservient and because he was known to have been born in Hawaii and to have been in the R. O. T. C. For refusing to do a corporal's washing, plaintiff was once beaten by the corporal with a boot, and almost nightly plaintiff was beaten up because of his birth in the United States.

9. Plaintiff entered the Japanese Army as a First Class Private and was discharged as a Superior Private.

10. Plaintiff did not resist induction into the Japanese Army because he feared the "Kempei" or military police, who he believed would forcibly take a draft dodger and mistreat or kill him and/or his relatives. Fear of imprisonment for violation of the conscription law was secondary to fear of the military police. However, he was never personally threatened by the "Kempei", or by anyone else.

11. When Japan surrendered, plaintiff went to China with his uncle, and at Shanghai applied for a United States passport.

12. Plaintiff admits that he lied to the Consul in that he told him he was in the Japanese Army but a short time rather than two and a half years. His reason for telling a lie was that he believed in error that such would facilitate his return home to see his sick father, whose only son he is, and also because he wished to get out of China before another war developed.

13. Plaintiff's passport application was denied at Shanghai due to his service in the Japanese Army.

14. Thereupon plaintiff returned to Japan, and worked as an interpreter for the British Occupation Forces.

15. In 1949 at Kobe plaintiff re-applied for a United States passport. Again he admittedly lied concerning his service in the Japanese Army. Finally in March 1950, he decided to tell the Consul the truth. His application was denied, due to aforesaid military service, and a certificate of loss of nationality was issued. 8 U.S. C.A. § 901.

16. At the hearing before this Court plaintiff asserted first that he was only a United States citizen but later in tears admitted that he was also a subject of Japan.

17. For some years prior to Pearl Harbor and until the surrender of Japan in 1945, Japan and its people were under the control of the military authorities of Japan, and the Secret or Thought Police, and the Special Higher Police; and during that period of time the people of Japan were generally in fear of them and particularly in fear of physical punishment from the Japanese military authorities, the Secret Police and the Special Higher Police.

18. The defendant, Dean Acheson, is the Secretary of State. As such, he is the Head of the State Department.

Conclusions of Law upon Remand from United States Supreme Court.

█ 1. Section 801(c) of Title 8 United States Code Annotated, is unconstitutional.

█ 2. As a citizen of Japan, living in Japan, the plaintiff was subject to Japanese law and under compulsion to comply with Japanese law. His compliance with the conscription law of Japan did not result in a loss of United States citizenship.

3. The service of the plaintiff in the Japanese Army was not a free or voluntary act; but was the result of fear, both of the penal sanctions of the Japanese conscription law, as well as fear that physical punishment would be inflicted upon him by the Japanese military authorities.

4. The plaintiff is entitled to a Declaration and Judgment that he is a citizen of the United States, and that he did not lose his United States citizenship by virtue of his service in the Japanese Army from 1943 to 1945.

### Opinion

For the reasons indicated in Kiyokura Okimura v. Acheson, D.C., 111 F.Supp. 303, the plaintiff's petition is granted.