POLICE COMMISSIONER OF BOSTON *vs.* SANDRA HARRIS GOWS.

Suffolk. December 7, 1998. - February 17, 1999.

Present: WILKINS, C.J., ABRAMS, LYNCH, GREANEY, FRIED, MARSHALL, & IRELAND, JJ.

*Practice, Civil,* Attorney's fees. *Contempt. Police Officer.*

Discussion of the circumstances in which a litigant is entitled to recover attorney's fees and, in particular, circumstances in which the other party has engaged in contemptuous conduct or has otherwise acted in bad faith. [17-19]

A police officer, who was required to bring a contempt action against the police department in order to force the department to comply with a Superior Court order requiring the department to reinstate her from a suspension without loss of compensation, was entitled to reasonable attorney's fees and costs expended with respect to the claims on which the officer prevailed in the contempt action and to attorney's fees and costs in connection with her successful appeal. [19-21]

CIVIL ACTION commenced in the Superior Court Department on September 16, 1992.

The case was heard by *John C. Cratsley,* J.

The Supreme Judicial Court granted an application for direct appellate review.

*William V. Hoch* for the plaintiff.

*Harold L. Lichten* for the defendant.

FRIED, J. The police commissioner of Boston (referred to as department) appeals from portions of a Superior Court judgment awarding attorney's fees to Officer Sandra Harris Gows.[1] Gows was entitled to a portion of her attorney's fees but not those incurred with respect to those portions of her claim on which the department prevailed.

I

Gows, a Boston police officer, was terminated by the depart-

---

[1]The department also appealed whether Gows was entitled to interest, from the date of the Civil Service Commission's order, on the award of lost overtime, detail earnings, and detective pay. The department has since reconsidered and, with the assent of Gows, has moved to dismiss this portion of the appeal. The judge's ruling as to interest thus remains intact.

ment on August 12, 1991, for violating several department rules including improper use of deadly force, conduct unbecoming an officer, nonconformance to criminal laws, and failure to notify the Norwood police in a situation involving family and friends. The department's action was in response to an incident during which Gows accidentally shot and killed her fifteen year old son while defending herself when attacked in a "jealous rage" by her boy friend, Detective Keith Turner, a fellow police officer.[2] Gows appealed from this termination to the Civil Service Commission (commission) and the administrative magistrate found that Gows was acting in self-defense and that the shooting was "a tragic accident." On August 17, 1992, the commission reversed the termination and ordered that Gows be reinstated without loss of compensation or other benefits.

The department then appealed to the Superior Court, which, on June 29, 1993, affirmed the commission's decision. The Superior Court judge found that the commission's decision was supported by substantial evidence and adopted it as the basis of her decision. Although the commission found that the testimony of Gows was credible and that of her former boy friend was not, the department took this action against Gows while retaining her assailant on the force.[3]

The department then appealed, but on August 22, 1994, withdrew that appeal. The department reinstated Gows in November, 1994. She was not, however, returned to full active duty. Rather Gows was initially ordered to report to the police academy, then in July, 1995, assigned to a nonuniformed, administrative position in the warrant unit. Nor did Gows receive the full compensation to which she was entitled. In June, 1995, over nine months after it withdrew its appeal, the

---

[2]Gows was the subject of a grand jury investigation because of the shooting, but the grand jury determined not to indict her. In this court the department describes the facts as follows: "On June 10, 1990, [Gows] was involved in an argument with her ex-boyfriend and fellow Boston Police officer, Detective Keith Turner. During the course of this argument, [Gows's] Department-issued revolver discharged resulting in the death of her fifteen year old son who was sleeping in the adjoining bedroom." The courts of the Commonwealth are entitled to a more forthcoming statement of the facts than offered here, especially from those who represent the public.

[3]Detective Turner was placed on administrative leave following the incident but was returned to active duty on July 17, 1991. An arbitrator found that "no charges were ever brought against him by the Department and he was never disciplined for his conduct in the apartment of [Gows] on June 10, 1990." As of 1993, Detective Turner was still on the Boston police force.

department paid Gows her lost base wages, less interim earnings. The department refused, however, to reinstate Gows at the rank of detective, although she was entitled to this rank based on time served, nor did it compensate her for her lost wages at the detective rate. The department also omitted from its calculation the overtime and detail pay that Gows lost as a result of being placed on leave.

On January 4, 1996, Gows filed an action for civil contempt, alleging that the department had failed to comply with the Superior Court order requiring the department to reinstate her without loss of compensation. She cited the failure of the department to compensate her fully, as required by the Superior Court order, and also contended that the order required the department to return her to active duty.

On June 3, 1997, a Superior Court judge held that, because the department had reinstated Gows, he could not find the department in contempt. The judge did hold, however, that the department had not completely fulfilled its obligations with regard to the order of reinstatement. The judge held that Gows completed the requirements to be rated as a detective before being placed on administrative leave on June 12, 1990, and, therefore, that she must be restored to the rank of detective and awarded the increased salary retroactively. He also determined that she was entitled to lost overtime and detail pay for the time from when she was placed on leave to the time when she was reinstated. The judge thus ordered the department to pay Gows $21,929.85 in lost overtime and detail pay, and $25,230.50 in lost detective pay (both sums including interest calculated from the date of the commission's order).

The judge held, however, that the department was not required to reinstate Gows to active duty. It was in the department's discretion, the judge held, whether or not to allow Gows to carry a firearm and thus to perform police functions requiring possession of such a weapon. The judge also held that the department had the discretion to order Gows to undergo retraining prior to any return to active duty, but disagreed with the department's claim that Gows was required by statute or regulation to attend the entire course as if a new recruit in the police academy.

After the judge issued the June, 1997, order, Gows moved for reconsideration of the denial of contempt and for attorney's fees and costs. The judge again refused to hold the department in

contempt but did grant the motion for attorney's fees and costs. The judge awarded Gows $53,287 in attorney's fees and $1,622.12 in costs. The department appeals from this judgment, contending that the costs and attorney's fees were improperly awarded.

## II

Massachusetts generally follows the "American Rule" and denies recovery of attorney's fees absent a contract or statute to the contrary. See *Preferred Mut. Ins. Co.* v. *Gamache*, 426 Mass. 93, 95 (1997). Underlying the rule that the prevailing litigant is not entitled to collect his attorney's fees from the loser is the principle that no person should be penalized for defending or prosecuting a lawsuit. Moreover, the threat of having to pay an opponent's costs might unjustly deter those of limited resources from prosecuting or defending suits. See *Fleishmann Distilling Corp.* v. *Maier Brewing Co.*, 386 U.S. 714, 718 (1967).

Where a party's conduct in a litigation constitutes contempt of court, however, a court has discretion to award attorney's fees against the contumacious party. See, e.g., *Judge Rotenberg Educ. Ctr., Inc.* v. *Commissioner of the Dep't of Mental Retardation (No. 1)*, 424 Mass. 430, 468 (1997); *Allen* v. *School Comm. of Boston*, 400 Mass. 193, 195 n.1 (1987); *Labor Relations Comm'n* v. *Boston Teachers Union, Local 66*, 374 Mass. 79, 96 (1977). In this case, the Superior Court judge declined to find the department in contempt, in part because by the time of the judgment, the department had finally substantially (but not completely) complied with the prior court order. Courts are not powerless, however, to respond to the recalcitrance of a party, who delays compliance with a lawful court order, forcing a prevailing party to resort to litigation, which should be unnecessary to obtain the fruits of her victory. It is for this reason that we have also held that where an insured is forced to litigate to obtain the representation to which his insurance entitles him, attorney's fees in that litigation may be awarded. See *Preferred Mut. Ins. Co.*, *supra*. The rule allowing the award of attorney's fees in the case of frivolous claims or appeals is in the same vein. See G. L. c. 231, § 6F (permitting award of reasonable attorney's fees and other costs and expenses in cases of insubstantial, frivolous, or bad faith claims or defenses). See, e.g., *Ashford* v. *Massachusetts Bay Transp. Auth.*, 421 Mass.

563, 568-569 (1995) (reminding litigants that improper appeals may result in sanctions under G. L. c. 231, § 6F); *Waldman* v. *American Honda Motor Co.*, 413 Mass. 320, 323 (1992); *Hahn* v. *Planning Bd. of Stoughton*, 403 Mass. 332, 334, 338-339 (1988); *Brookline* v. *Goldstein*, 388 Mass. 443, 448 (1983); *Pollack* v. *Kelly*, 372 Mass. 469, 477 & n.5 (1977) (reminding litigants that G. L. c. 231, §§ 6E-6G, provides a basis for sanctions for "continued use of . . . delaying tactics in the face of settled law against the presentation of interlocutory appeals").

Although the courts of the Commonwealth have not had occasion to generalize from these special cases, courts in other jurisdictions have recognized that, where overriding considerations so indicate, it is within the power of the court to award attorney's fees where it is in the interest of justice. See *Alyeska Pipeline Serv. Co.* v. *Wilderness Soc'y*, 421 U.S. 240, 259 (1975); *Mills* v. *Electric Auto-Lite Co.*, 396 U.S. 375, 391-392 (1970). Conduct has been held to justify an award of attorney's fees where a party has acted "in bad faith, vexatiously, wantonly, or for oppressive reasons," *Newman* v. *Piggie Park Enters.*, 390 U.S. 400, 402 n.4 (1968); 5 Moore's Federal Practice par. 54.77(27), at 1709 (2d ed. 1974); where the litigant's conduct is unreasonably obdurate or obstinate, *Stolberg* v. *Trustees for State Colleges of Conn.*, 474 F.2d 485, 490 (2d Cir. 1973); and where it should have been unnecessary for a successful litigant to have brought the action. *Bradley* v. *School Bd. of Richmond*, 345 F.2d 310, 321 (4th Cir.), vacated on other grounds, 382 U.S. 103 (1965).

In this vein, several jurisdictions have a "longstanding rule authorizing a court to award reasonable attorney's fees to a litigant who is required to bring an action to enforce a judicial decree." *Indian Head Nat'l Bank* v. *Corey*, 129 N.H. 83, 86 (1986). See *In re Appeal of Gadhue*, 149 Vt. 322, 329 (1987) (awarding fees where party "prolonged the litigation by denying plaintiff the fruits of her initial victory"); *Service Employees Int'l Union* v. *Children's Hosp. Nat'l Medical Ctr.*, 640 F. Supp. 272, 278 (D.D.C. 1984) (not holding party in contempt but awarding expenses incurred in proceedings to secure compliance with court order); *Andrews* v. *District of Columbia*, 443 A.2d 566, 569 (D.C.), cert. denied, 459 U.S. 909 (1982) (attorney's fees may be awarded "where an individual is forced to seek judicial assistance to secure a clearly defined and established right, which should have been freely enjoyed without

such intervention"). This rule "does not require an express finding of contempt." *Indian Head Nat'l Bank, supra* at 86. See *Harrison Baking Co.* v. *Bakery & Confectionery Workers, Local 3,* 777 F. Supp. 306, 311-312 (S.D.N.Y. 1991) (even where contempt is not appropriate, courts have awarded the expense incurred by a party in proceedings before this court to secure compliance by the other party); *Littlejohn* v. *Bic Corp.,* 697 F. Supp. 192, 194 (E.D. Pa. 1988) ("Even where no finding of contempt is made, the Court may award complainant in a civil contempt proceeding attorneys' fees and expenses incurred in the attempt to ensure the enforcement of the Court's Order"). The justification for such an award is the "gratuitous burden placed on the successful party who is forced to incur further legal expenses simply to obtain what a court has previously awarded or to enforce a right that a court has previously declared." *Indian Head Nat'l Bank, supra.*

An award of attorney's fees should be reserved for rare and egregious cases. This is such a case. The judge acted within his discretion. He consulted his sense of justice in awarding attorney's fees to compensate Gows for the needless litigation in which she has been forced to engage in order to enjoy the rights she had already been adjudicated to have. Nothing in precedent or statute precludes our doing the same. The judge found that the department did not fulfil the obligations placed on it by the order of reinstatement. The judge found that the department refused to reinstate Gows at the rank of detective despite the fact that its agreement with the Boston Patrolmen's Association to promote any person who had worked in an investigative capacity for one year to the position of detective and that Gows had worked in such a capacity for one year and five days prior to being placed on administrative leave. The judge also found that Gows was entitled to her back pay at the detective rate, and that the department was obligated to compensate her for the overtime and detail pay which she lost while on leave.[4] An award of attorney's fees is appropriate.

---

[4]Gows sought overtime and detail pay from the time she was placed on administrative leave until the time at which she would be restored to full active duty and have the opportunity to earn overtime and detail pay. The judge ruled that Gows was entitled to such pay from the time that she was placed on administrative leave until the time at which she was reinstated to the force. The court denied her request to award such pay from the time Gows was reinstated on the force until the time at which she was allowed to return to active duty.

Gows did not, however, prevail on all the issues raised. For example, the judge determined that Gows was not entitled to be reinstated to active duty. Specifically, the court held that the decision whether or not to allow Gows to carry a firearm was within the managerial discretion of the department. The department could thus decide that Gows was not eligible to carry a firearm, which would restrict her to a limited range of roles. The department was entitled to defend its discretion to determine independently Gows's eligibility to carry a firearm and thus to return to full active duty. The order of reinstatement did not remove this discretion. Gows should not be awarded attorney's fees that relate to this portion of her claim.[5]

The amount awarded by the order granting attorney's fees and costs constitutes all the expenses incurred by Gows in connection with her contempt motion. While it was within the judge's discretion to award the portion of Gows's fees incurred with respect to the issues on which she prevailed, as explained above, a comprehensive award is improper as the department did, in fact, prevail on at least one point. We thus remand the case to the Superior Court to award fees and costs expended because the department required Gows to litigate to gain that to which she was entitled under the reinstatement order and the law (for example, the rank of detective and the right to have back pay calculated at that rank) or to the extent that the department made unreasonable demands with respect to or attached unreasonable conditions to the order (possibly the requirement that Gows undergo a complete course of retraining at the police academy). The Superior Court must, however, separate out the portion of the attorney's fees and costs expended with respect to claims on which Gows did not prevail, but acted within its discretion in ordering the payment of fees reasonably spent on the rest.[6]

---

[5]Regarding retraining, the judge did rule that the department had discretion to order Gows to undergo some form of retraining. The judge did, however, reject the department's claim that Gows was required by statute or department regulations to attend a complete new recruit session at the police academy. The judge went on to suggest that such extensive retraining was not consistent with prior department practice and that it was likely beyond the discretion of the department to require Gows to submit to this. The judge is far more familiar with the context in which this dispute arose and is in a better position to determine whether the portion of attorney's fees that relates to this issue should be awarded.

[6]Gows is also entitled to recover an appropriate portion of her attorney's

We affirm the award of attorney's fees and costs insofar as they were incurred in the pursuit of that to which Gows was entitled under the order of reinstatement. We remand the case to the Superior Court to determine what portion of the attorney's fees and costs are awardable pursuant to this opinion.

*So ordered.*

fees and costs incurred with respect to her appeal to this court, and she may apply to a single justice for such an award. See *Vassallo* v. *Baxter Healthcare Corp.*, 428 Mass. 1, 23 (1998); *Linkage Corp.* v. *Trustees of Boston Univ.*, 425 Mass. 1, 29, cert. denied, 522 U.S. 1015 (1997); *Yorke Mgt.* v. *Castro*, 406 Mass. 17, 20 (1989).