BARBARA J. KROCK *vs.* RICHARD H. KROCK.

No. 97-P-1262.

Middlesex. November 16, 1998. - March 25, 1999.

Present: PERRETTA, GREENBERG, & SPINA, JJ.

*Contempt. Probate Court,* Attorney's fees. *Divorce and Separation,* Attorney's fees, Child support, Separation agreement. *Contract,* Separation agreement.

In an action for contempt in a divorce case, the judge correctly concluded that the former husband had not violated the terms of the separation agreement with respect to maintaining health and hospital insurance for the children and the former spouse [529-530], with respect to payment of the children's uninsured medical expenses [530], or with respect to the children's educational expenses [530-531]; however, the judge's award of attorney's fees to the former husband, appropriately under G. L. c. 208, § 38, was vacated as inadequate, and that issue was remanded for further consideration [531-534].

COMPLAINT for divorce filed in the Middlesex Division of the Probate and Family Court Department on August 24, 1988.

A complaint for contempt, filed on September 8, 1995, was heard by *James M. Sweeney,* J.

*Kevin M. Corr* for Barbara J. Krock.

*David E. Cherny* (*Jacob M. Atwood* with him) for Richard H. Krock.

GREENBERG, J. This is an appeal from a judgment of the Probate Court dismissing Barbara's complaint for contempt and from the judge's award of attorney's fees to Richard, her former husband. Richard cross-appeals, contending that the fees, which amount to less than one-third of his total counsel fees, were inadequate.

On April 10, 1990, a judgment of divorce nisi, which incorporated a separation agreement that made comprehensive provision for alimony, child support, custody, and property divi-

sion, was entered. Two of the relevant terms read as follows: (1) "[Richard] shall maintain his existing (or equivalent) health and hospital insurance for [Barbara] and for the children. . . . He will pay the children's uninsured medical and dental expenses until each is emancipated," and (2) "[Richard] shall provide and pay for the private secondary education of the children and their college educational expenses. [Those] shall be deemed to include, where applicable, tuition, room, board, activity fees, course books, laboratory fees, mandatory health insurance required by the institution, and charges directly related to classroom work which are billed by the institution, and two round trips per year for each daughter when attending college."

Barbara, in this bitterly contested appeal, alleges that Richard (1) failed to provide equivalent health insurance when he changed his employment; (2) neglected to pay $1,662.48 of medical and dental expenses incurred by her and their two daughters, Sabra and Alexis, between 1993 and 1996; and (3) failed to reimburse Barbara for $25,000 paid to the "Global Routes Program" for their daughter's participation in a British exchange program in the spring and summer of 1995.[1]

1. *Medical and dental insurance.* In 1990, at the time of their divorce, the parties, both represented by counsel, executed the separation agreement which, as noted, obligated Richard to "maintain his existing (or equivalent) health and hospital insurance for the [w]ife and for the children." Barbara alleges that certain medical bills went unpaid because of lack of insurance coverage. The trial judge determined that Richard at all relevant times complied with this obligation.

After Richard left Wedgestone Financial, a corporation he controlled, in September, 1991, he became employed by the Cobblestone Group, which provided health insurance. When he left that company, in December of 1993, he purchased another health insurance policy which was still in effect at the time of the trial.

Barbara contends, however, that both the policy provided by

---

[1]Two other claims, that Richard failed to deliver one hundred per cent of Barbara's beneficial interest in property in South Carolina and that Richard failed to provide an opinion regarding that property by an attorney in South Carolina, were summarily, and correctly, dismissed by the trial judge. He determined that the first matter had already been addressed by a prior contempt action and that Richard was not required to provide such an opinion under the divorce decree.

Cobblestone and the one that Richard purchased on his own did not provide coverage equivalent to that which Barbara and the children enjoyed at the time of the divorce judgment. See *Goldberg* v. *Goldberg,* 7 Mass. App. Ct. 831, 835-836 (1979). While the record on this point remains vague, we cannot say the findings of the judge that both policies afforded the requisite coverage are wrong. Here, the same judge presided at both the divorce and contempt proceedings and thus was in a position to construe the divorce judgment "in accordance with justice and common sense." *Whelan* v. *Frisbee,* 29 Mass. App. Ct. 76, 81 (1990). It lay within the bounds of reasonable interpretation to conclude that the insurance policies were roughly the same.

2. *Uninsured medical and dental expenses.* As we have noted, the agreement between Barbara and Richard required him to "pay the children's uninsured medical and dental expenses until each is emancipated."

Barbara argues that the judge unfairly absolved Richard of his obligation to pay for these uncovered medical expenses because she had not conferred with him before obtaining the services. Richard says that the contested bills were part of a scenario in which he would receive bills without knowledge of what services were required and was forced unilaterally to decide whether they were covered by the agreement. He also testified that some of the bills were never sent to him. With other bills, he contested the necessity of the treatment or the reasonableness of the charges. He claims that Barbara declined to provide him any information concerning these charges. The judge agreed and also found that Barbara failed to establish that many of the children's medical expenses were fair and reasonable.

In addition, Sabra, the eldest daughter, was emancipated in May, 1994, after graduation from college. Of twenty-one bills submitted in evidence by Barbara, the judge found that many of the charges related to Sabra's treatment after her emancipation. Other bills were for uninsured medical expenses for Barbara which Richard was not obligated to pay under the agreement. During the trial, the judge voiced concern that Richard was entitled, in a joint custody situation, to be consulted about expenses not covered by health insurance. He found that Barbara failed to communicate in this respect. On review of the record, we see no reason to disturb the judge's findings in this regard.

3. *Expenses for the Global Routes program.* Barbara chal-

lenges the judge's findings as to a tutorial program attended by their daughter, Alexis, at Oxford, England in 1995. The judge found that the "educational/travel costs" (nearly $25,000) were not educational college expenses "covered by the divorce decree." Barbara filed an affidavit in support of her complaint for contempt, stating that Alexis attended an educational program called Global Routes at Oxford University. Taken at face value, her representation seems plausible as an educational expense. However, cross-examination of the placement specialist, Cornelius Bull, disclosed the following: the program is a "service to find things for kids to do between high school and college, kids who want to take time out, empty nested mothers, burned out mothers." What piqued the judge was Barbara's attempt to fob off the expense as an educational one. In his finding on this issue, he quotes an inquiry written by Bull at her request to the program's director: "Can you send a letter to [her] (on your letterhead, of course) which looks like a tuition bill from a college?" Thus, the judge was correct in finding that Richard was not responsible for these payments as not "private secondary education . . . [or] college educational expenses" covered by the decree.

4. *Attorney's fees.* Richard moved pursuant to G. L. c. 231, § 6F, for attorney's fees and costs in his answer to Barbara's complaint for contempt. At the conclusion of the trial, his counsel, by affidavit, submitted a bill for $69,872.15 for 197.9 hours of work by three lawyers over a period of two years. The judge allowed $20,000 of that amount. He determined that Barbara had the ability to pay the fee, a finding that Barbara does not contest. Rather her position on appeal is that the judge was without authority to award any legal fees by virtue of the so-called "American Rule" which requires each litigant to an action to bear his or her own expenses (subject to limited exceptions).[2] In particular, she correctly argues that the judge did not adhere to the requisites of G. L. c. 231, § 6F, in that he neither

---

[2]"As a general rule in Massachusetts, a litigant must bear his own expenses including attorney's fees, except where a statute permits the award of costs, a valid contract [or] stipulation provides for costs, or rules concerning damages permit[] recovery." *Judge Rotenberg Educ. Center, Inc.* v. *Commissioner of the Dept. of Mental Retardation (No. 1)*, 424 Mass. 430, 468 (1997), citing to *Waldman* v. *American Honda Motor Co.*, 413 Mass. 320, 322 (1992). See *Preferred Mut. Ins. Co.* v. *Gamache*, 426 Mass. 93, 95-97 (1997) (creating an additional exception where an insured under a homeowner's policy has successfully established an insurer's duty to defend); *Police Commr. of Boston* v.

conducted a separate hearing nor made distinct findings concerning bad faith and whether the claims were wholly insubstantial. See generally *Bartlett* v. *Greyhound Real Estate Fin. Co.*, 41 Mass. App. Ct. 282, 291-292 (1996); *Pirie* v. *First Congregational Church*, 43 Mass. App. Ct. 908, 910 (1997). See also *Masterpiece Kitchen & Bath, Inc.* v. *Gordon*, 425 Mass. 325, 330 (1997). It is not, however, entirely clear from the judge's findings on what authority he based his award of attorney's fees.[3]

In his written conclusions, the judge invokes G. L. c. 215, § 34A.[4] Barbara correctly argues that attorney's fees may, in appropriate circumstances, be awarded in a civil contempt action as an element of the cost of enforcing the order of the court, see *Judge Rotenberg Educ. Center, Inc.* v. *Commissioner of the Dept. of Mental Retardation (No. 1)*, 424 Mass. 430, 468 (1997), but that principle has no application in the present case. See also *Police Commr. of Boston* v. *Gows*, 429 Mass. 14, 17-19 (1999). Similarly, Richard has no recourse to G. L. c. 215, § 34A, because he was not the plaintiff in the contempt action.

Finally, Barbara argues that G. L. c. 208, § 38, which permits assessment of attorney's fees as an incident to a divorce proceeding, cannot govern an award here. With a bow to *House* v. *House*, 368 Mass. 120, 122 (1975), the Supreme Judicial Court in *Kelley* v. *Kelley*, 374 Mass. 826, 827 (1978), construed G. L. c. 208, § 38, as conferring authority on a "judge of the

*Gows*, 429 Mass. 14, 17-19 (1999) (fees may be awarded to a party who is forced to litigate to obtain what had previously been awarded by a court even though the opposing party's conduct does not constitute contempt).

[3]If the judge sought to act under G. L. c. 231, § 6F, then Barbara's appeal would be to a single justice of this court — not to the full panel. See G. L. c. 231, § 6G; *Bailey* v. *Shriberg*, 31 Mass. App. Ct. 277, 282-283 (1991).

[4]Section 34A, fourth par., inserted by St. 1982, c. 282, effective October 6, 1982, reads as follows:

> "In entering a judgment of contempt for failure to comply with an order or judgment for monetary payment, there shall be a presumption that the plaintiff is entitled to receive from the defendant, in addition to the judgment on monetary arrears, all of his reasonable attorney's fees and expenses relating to the attempted resolution, initiation and prosecution of the complaint for contempt. The contempt judgment so entered shall include reasonable attorney's fees and expenses unless the probate judge enters specific findings that such attorney's fee[s] and expenses shall not be paid by the defendant."

Probate Court . . . to order one spouse or former spouse to pay a reasonable sum . . . to enable the other spouse . . . to prosecute or *defend* [emphasis added] a complaint for contempt for alleged violation of a provision of a divorce decree."[5] This is all the more so where, as here, the judge found that there were "several wholly unsubstantiated claims" and that "the record facially substantiates an award."

We conclude that a judge of the Probate Court possesses authority pursuant to G. L. c. 208, § 38, to award legal fees and costs in these circumstances. It is then for the trial judge to review the evidence and determine whether to award attorney's fees "[a]s long as the amount awarded is not incommensurate with an objective evaluation of the services performed." *Ross* v. *Ross*, 385 Mass. 30, 38-39 (1982). See *Old Colony Trust Co.* v. *Third Universalist Soc.*, 285 Mass. 146, 151 (1934). If a judge has considerable discretion under G. L. c. 208, § 38, in determining the necessity and amount of attorney's fees for the prevailing party in a divorce action, *Moriarty* v. *Stone*, 41 Mass. App. Ct. 151, 159 (1996), we discern no reason why a judge ought not to be afforded discretion to award reasonable attorney's fees and costs to one who successfully defends a frivolous contempt action.

In establishing the amount of the award, the judge was not required to conduct a full evidentiary hearing. See *Ross* v. *Ross*, 385 Mass. at 38-39. As we have noted, much discretion is afforded trial judges in setting counsel fees "if their findings of fact are not clearly erroneous." *Kennedy* v. *Kennedy*, 23 Mass. App. Ct. 176, 179 (1986), and cases cited, *S.C.*, 400 Mass. 272 (1987).

Here, however, even if one assumes that some part of Richard's representation by three lawyers may have been duplicative, on a superficial view, the $20,000 allowed seems (though we are not certain) inadequate.[6] The judge merely noted that Barbara had "the ability to pay th[e] award . . . as well as

---

[5]Compare *Heistand* v. *Heistand*, 384 Mass. 20, 28-29 & n.9 (1981) (upholding the denial of fee award, under G. L. c. 231, § 6F, to a defendant who did not prevail in a contempt action).

[6]Cases on this subject indicate that awards in domestic relations litigation are to be governed by caution and restraint, for fees in such cases are awarded strictly on conservative principles. See *Hano* v. *Hano*, 5 Mass. App. Ct. 639, 641 (1977); *Kane* v. *Kane*, 13 Mass. App. Ct. 557, 560 (1982). See also *Robbins* v. *Robbins*, 19 Mass. App. Ct. 538, 543-544 & n.11 (1985).

her own counsel fees," which were close to $85,000. We think, therefore, in these circumstances the value of Richard's lawyer's fees should be reconsidered and a fresh award made upon the requisite findings.[7] Under the circumstances, we decline to award appellate attorney's fees.

Accordingly, we affirm the judgment dismissing the complaint for contempt. The order of December 3, 1996, ordering Barbara to pay $20,000 for costs and attorney's fees is vacated and the case remanded to the Probate Court for a hearing and determination by another probate judge (the trial judge has died) of the amount on the award of fees.

*So ordered.*

---

[7]We do not intimate what the award should be or, in fact, if it should be altered.