Coven, J.
This is an action to enforce a 1991 default judgment obtained by the plaintiff-assignee for the balance of interest owed on a promissory note executed by defendant Douglas J. Rowe (“Rowe”). Rowe contested both the substantive merits and the jurisdictional validity of the judgment, and counterclaimed for the plaintiffs alleged unfair debt collection practices. After trial, judgment was entered for the plaintiff in the amount of the prior judgment, plus subsequent interest, costs and attorney’s fees. Rowe has appealed pursuant to Dist./Mun. Cts. R. A. D. A., Rule 8C.
On June 17,1985, Rowe executed a promissory note and security agreement on behalf of “Morse, Morte & Rowe Cotting Ave. Marlboro, MA 01752” for a loan of $18,700.00 plus interest from the First National Bank of Marlboro. “Morse, Morte & Rowe” was Rowe’s former law firm under which name he continued to practice law after the respective death and retirement of his two partners. The law offices were located at 21 Cotting Ave. in Marlborough. The First National Bank was closed in 1987, and the Federal Deposit Insurance Corp. (“FDIC”) assumed Rowe’s note and obligation as the Bank’s receiver. Plaintiff Cadle Co. (“Cadle”) purchased the note from the FDIC in 1988.
In 1989, Rowe entered into settlement negotiations with Cadle. A check for $15,000.00 given by Rowe to Cadle in late August was returned for insufficient funds. By subsequent letter dated August 30, 1989, Cadle informed Rowe that it was terminating negotiations and demanded full payment in the amount of $19,807.65 by the close of business on September 5th. Rowe waited until September 5th to forward a cashiers check, which was in the amount of $15,000.00 only.
On January 15,1991, Cadle commenced suit against Rowe and another as partners in Morse, Morte & Rowe to collect the outstanding note balance. A summons was issued to Rowe at 21 Cotting Ave., the law firm’s location. The sheriffs return recited that Rowe was served by leaving the complaint and summons at his “last and usual place of abode” at 21 Cotting Ave. and by mailing copies to the same address. No answer was filed, and Rowe was defaulted in March, 1991. In August, 1991, Cadle filed a Mass. R. Civ. P., Rule 55(b) (2), request for an assessment hearing and the entry of a default judgment. Rowe’s secretary telephoned Cadle’s counsel and requested a continuance of the September 4th hearing because of a conflict in Rowe’s schedule. Cadle agreed, and the matter was remarked for September 18th. Rowe failed, however, to appear at the hearing on that date, a default judgment was eventually entered against him on December 11,1991, and copies of *50 the judgment were mailed. Execution in the amount of $8,090.27 was issued on February 24,1992. In March, 1992, Rowe received Cadle’s Mass. R. Civ. P., Rule 69, notice of deposition.
Rowe never filed a Rule 60(b) motion for relief from judgment. Between 1991 and 1996, one or more nominal payments of $50.00 were forwarded to Cadle, but Rowe refused to pay the full amount owed. On August 16, 1996, Cadle filed this action to enforce the 1991 judgment.
Rowe initially filed a special appearance claiming that Cadle had received $15,000 in full satisfaction of all claims in 1989. In September, 1996, Rowe filed an answer re-alleging full payment, and counterclaimed for Cadle’s alleged unfair debt collection practices “in violation of federal and state law.” On May 6, 1997, Rowe filed an amended answer which contended that he had just discovered a check given in 1987 to the FDIC in full payment of the note. In a “substituted amended answer” filed two weeks after that, Rowe alleged for the first time that no service was made on him, and that the 1991 judgment was void because the underlying debt had been discharged and because of an undisclosed fraud on the court. After trial, judgment was entered for Cadle in the amount of $17,159.45, plus $4,000.00 in attorney’s fees.
1. The concept of a void judgment is “narrowly construed.” O’Dea v. J.A.L., Inc., 30 Mass. App. Ct. 449, 455 (1991). A judgment is void only if “the court from which it issues lacked jurisdiction over the parties, jurisdiction over the subject matter or failed to provide due process of law.” Harris v. Sannella, 400 Mass. 392, 395 (1987); Baybank v. Sullivan, 1998 Mass. App. Div. 112. In a case where there is a failure of service of process, any judgment entered is void and the defendant is entitled to relief therefrom. See, e.g., Farley v. Sprague, 374 Mass. 419, 425 (1978); Konan v. Carroll, 37 Mass. App. Ct. 225, 228-229 (1994); Metivier v. McDonald’s Corp., 16 Mass. App. Ct. 916, 918 (1983); New England Die Cutting, Inc. v. O’Neil, 1997 Mass. App. Div. 6, 7. The reason is that service of process is designed to insure the defendant’s due process rights to notice and an opportunity to be heard. Hardy v. Utica Mut. Ins. Co., 369 Mass. 696, 699 (1976); Carroll v. DeMoulas Super Markets, Inc., 1987 Mass. App. Div. 163, 165. Where service may not have been perfected, but the defendant was actually aware of the litigation at an early stage and chose not to appear, deliberately delayed for an unreasonable time before filing a motion to vacate, and failed to advance convincing and detailed defenses, relief from judgment is not required as a matter of law. Atlas Elev. Co. v. Stasinos, 4 Mass. App. Ct. 285 (1976). See also Gill v. Flynn, 1997 Mass. App. Div. 138.
In the instant case, the trial judge found as a fact that Rowe received the summons and complaint delivered and mailed to his law offices,[2] and that he was aware of the action from its inception. This finding of fact is supported by the record. Rowe maintained his law offices at 21 Cotting Ave. and conceded at trial that he received mail at that address. More significantly, Rowe clearly had notice of the lawsuit well prior to the entry of judgment as evidenced by his request for a continuance of the hearing on Cadle’s Rule 55(b) (2) motion. Rowe chose neither to appear at that hearing, nor to seek a removal of the default prior to the entry of judgment. Further, despite early, if not immediate, notice of judgment, Rowe never filed a Rule 60(b) motion for relief. He did not even raise an issue of service until *51 after Cadle commenced this action and then only in the context of his fourth responsive pleading filed on May 20, 1997, a full six and one-half years after the entry of the prior judgment.
On the basis of the record before us, there was no reversible error in the trial judge’s finding of fact that Rowe had actual notice of the first action and chose not to appear, or in his determination that Rowe is not entitled to relief from the 1991 judgment.
2. We note also that Rowe failed to present at trial any credible defense to Cadle’s claim for recovery of an outstanding balance on the promissory note. While a judgment which is not void cannot be collaterally attacked in a subsequent action to enforce it, Madden v. Madden, 359 Mass. 356, 361-362 (1971); Noyes v. Bankers Indem. Ins. Co., 307 Mass. 567, 569 (1941); Pearse v. Hill, 163 Mass. 493 (1895), the trial judge permitted Rowe to introduce evidence that the debt underlying the 1991 judgment had been previously satisfied. Upon review of such evidence, the court made findings of fact that (1) Rowe’s 1987 payment to the FDIC, which Rowe had forgotten to mention in eight years of dealings with Cadle, was not a payment on the note (#005128) at issue in this case; and (2) Rowe’s $15,000.00 payment to Cadle in 1989 did not constitute an accord and satisfaction. There was no error.
In support of his alleged 1987 payment of the note, Rowe produced only two documents. The first was an FDIC “Payoff Request Form” which identified note #005128, demanded payment in the specific amount of $14,133.41 and bore only the date “4/6” with no stated year. The second was an April 7,1987 canceled check from Rowe to the FDIC in the larger amount of $14,491.43 which did not reference note #005128 or any other account. Rowe admitted that at the time in question, the law firm had at least two other unpaid loans with the FDIC and that he had several clients with FDIC obligations. He could not produce any account, check stub or other ledger entry connecting the check with loan #005128. Nor could he adequately explain the discrepancy in the payment amount demanded and the amount of the check allegedly written in payment thereof only one day later.
As to his second contention, Rowe testified only that it was his understanding that his $15,000.00 payment to Cadle in 1989 constituted full satisfaction of Cadle’s claim. His testimony was easily rebutted by proof of Cadle’s lack of assent to any accord and satisfaction, see Pollock v. The Art Institute, 12 Mass. App. Ct. 919, 920 (1981), in the form of its prior letter to Rowe terminating negotiations and demanding full payment of the note.
3. Generally, attorney’s fees may be recovered where an applicable statute, rule or contract provision so permits. G.E.B. v. S.R.W., 422 Mass. 158, 173 (1996); Krock v.Krock, 46 Mass. App. Ct. 528, 531 n.2 (1999). Clause 4 of Rowe’s note provided for attorney’s fees in the event of a default.[3] A hearing was held to determine a reasonable fee for Cadle’s counsel in this case, and there is nothing to suggest that the trial judge did not apply the appropriate standards, see Linthicum v. Archambault, 379 Mass. 381, 388-389 (1979), or otherwise abused his discretion in assessing the $4,000.00 fee awarded. Fontaine v. Ebtec, 415 Mass. 309, 324 (1993).
4. Finally, there was no error in the court’s judgment for Cadle on Rowe’s counterclaim. Rowe alleged that Cadle committed unfair debt collection practices in violation of 940 CMR 704(1) (i) in failing to give him written notice of his right to request that no telephone calls regarding the debt be made to his place of employment.
The term “debt” as defined in 940 CMR 7.03, the Massachusetts Debt Collec *52 tion Regulations, is limited to money or its equivalent which is owed
as a result of a purchase, lease or loan of goods, services, or real or personal property, for personal, family or household purposes or as a result of a loan of money which is obtained for personal, family or household purposes....
This regulatory definition is consistent with its federal counterpart contained in the Fair Debt Collection Practice Act, 15 U.S.C. 1692a, which, again, limits its scope to obligations incurred for personal, family or household purposes.
The obligation in this case was a business loan not incurred for personal, family or household purposes. In construing the Massachusetts statute"[4] and regulation, we are guided by the construction given the parallel Federal statutes by the Federal courts. Howard v. Burlington, 399 Mass. 585, 589 (1987). The Federal cases have consistently held that a business-related loan or debt does not constitute a debt for purposes of the Fair Debt Collection Practice Act. See, e.g., First Gibraltar Bank F.S.B. v. Smith, 62 F.3d 133, 135-136 (5th Cir. 1995); Bank of Boston Intern. of Miami v. Tefel, 644 F. Supp. 1423, 1430 (E.D.N.Y. 1986).
Because Cadle’s actions involved the collection of a note executed in a business context on behalf of a law firm, the consumer regulations relied upon by Rowe are inapplicable. Fedenyszen v. Pollano, 1997 Mass. App. Div. 97, 99.
Judgment affirmed. Appeal dismissed.
So ordered.

 The judge erred in ruling that service on Rowe, sued in his individual capacity, was perfected under Rule 4(d)(2). Further, “ [tjhe requirements of Rule 4(d)(1) for service upon an individual defendant... are not satisfied by leaving process at the individual’s place of business or employment unless the person to whom such process is delivered was authorized by the defendant to receive service on his behalf.” New England Die Cutting, Inc. v. O’Neil, supra at 6. See also Foley v. Walsh, 33 Mass. App. Ct. 937, 937-938 (1992).

 Clause 4 states: ‘To the extent permitted by law, Borrower and each Endorser and Guarantor, if any, shall be liable for all Holder’s costs of collection, including, without limitation, attorneys fees.”

 Unfair debt collection practices are governed by G.L.c. 93, §49, rather than G.L.c. 93A as suggested by Rowe.