VAN Gestel, Allan, J.
This matter is before the Court on two motions seeking attorneys fees and costs: Black & Veatch Construction, Inc.’s Motion for Reasonable Attorneys Fees and Costs, Paper #237; and Defendant Alstom Power, Inc.’s and Alstom Power, N. V.’s Motion for Counsel Fees, Costs and Expenses, Paper #241. Both motions are grounded on G.L.c. 231, §6F.
BACKGROUND
On June 14, 2004, this Court granted summaiy judgment in favor of Black & Veatch Construction Co. (“BVCI”), Alstom Power, Inc. and Alstom Power, N.V. (collectively “Alstom”) (18 Mass. L. Rptr. 14]. See Memorandum and Order, Paper #206. Full familiarity with that decision is presumed. On June 29, 2004, this Court entered an appropriate order pursuant to Mass.R.Civ.P. Rule 54(b), and a separate and final judgment on the motions for summaiy judgment, see Papers ##211 and 212, thereby facilitating an appeal. The matter was appealed, and thereafter, on June 13, 2006, a Rescript was received from the Appeals Court affirming in all respects this Court’s determination on summaiy judgment. Paper #229.[3] The present motions followed.
The Court bifurcated the issues relating to the motions such that it heard first the issue of whether any attorneys fees, expenses or costs were due, and reserved for later, if necessary, an assessment of the actual fees, expenses and costs sought.[4]
Involved in the underlying claim is a project to construct a power plant in Meriden, Connecticut. Detailed history of the project is explained in the Memorandum and Order on the summaiy judgment motions. Paper #206. For these purposes it is enough to know the following.
By the spring of 1998, an entity called Meriden Power was formed by the plaintiffs (collectively “PDC-EI Paso”) and began the process of developing a 544-megawatt electric generating facility to be located on a 36-acre parcel in Meriden, Connecticut (the “Meri-den Project”).
Between April 1998 and July 1998, a consortium including Alstom and BVCI provided extensive technical assistance to PDC-EI Paso in connection with the Meriden Project. Through their participation in the permitting work, the consortium knew that the Meri-den Project was originally projected to achieve commercial operation as early as June 2001.
After negotiations during June and July 1998, it is alleged in the second amended complaint that the consortium and Meriden Power “signed an agreement[5] for the Meriden Project in Boston, Massachusetts on July 22, 1998 [the ‘July 1998 document’], by which the consortium agreed to design and build the Meriden Project for [PDC-EI Paso] at the turnkey price of $217 million (which included two ABB GT-24 turbines), plus site-specific costs and escalation.”
The alleged agreement was in actuality a short, three-page Memorandum of Understanding (“MOU"), which this Court on summaiy judgment determined not to have risen above the agreement to agree stage.
PDC-EI Paso contended that the July 1998 document constituted a “preliminaiy” agreement that locked down the material terms under which the developer and the contractor would enter an “engineer, procurement and construction” (“EPC”) contract upon completion of the permitting process. PDC El-Paso suggested that norms existed for the customaiy resolution of the subjects left for negotiation. PDC El-Paso *21 also urged that the parties specified formulae and procedures that, although contingent on future events, provided mechanisms to narrow present uncertainties as to rights and obligations.
BVCI and Alstom claimed — and this Court ultimately ruled — that there never was an EPC contract and that the July 1998 document was not the substantial equivalent thereof. Further, citing to an earlier three-project MOU, BVCI and Alstom pointed to the fact that PDC-E1 Paso agreed that the three-project MOU was not a commitment to build three plants and, therefore, the July 1998 document should not be considered an agreement to build a single plant either. Rather, BVCI and Alstom insisted that the 1998 document was merely a first step in a long process leading — unsuccessfully, here — to a possible EPC contract.
Given the magnitude of the fees and expenses sought, and any examination of the activity on the court docket — now over 246 entries — it becomes clear that this case was heavily litigated.
This Court said, intentionally, at an oral discussion at a Rule 16 conference with counsel after affirmance of its decision on summary judgment, “it did not find this an easy decision,” and the decision “wasn’t an open and shut. . . victory for the [defendants].”
DISCUSSION
General Laws c. 231, §6F[6] permits a Court to assess reasonable legal costs and fees against a party when all or substantially all of its claims are wholly insubstantial, frivolous, and not advanced in good faith. Masterpiece Kitchen & Bath, Inc. v. Gordon, 425 Mass. 325, 328 (1997). The moving parties, here Alstom and BVCI, must establish that each of these three criteria has been satisfied. Fredkin v. Camelot IS-2 Int'l, 65 Mass.App.Ct. 1102, 2005 WL 2875370 at *2 (2005) (unpublished), citing Pirie v. First Congregational Church, 43 Mass.App.Ct. 908, 910 (1997). A Court must award legal costs and fees if it decides, in its discretion, that the elements of §6F have been satisfied. Masterpiece Kitchen & Bath, Inc., 425 Mass. at 328. Any such decision must describe the specific facts and reasons upon which the finding is based. G.L.c. 231, §6F. The Court may not consider the conduct of the parties before litigation began. Lewis v. Emerson, 391 Mass. 517, 526 (1984).
The Supreme Judicial Court disfavors fee awards. “Massachusetts generally follows the ‘American Rule’ and denies recovery of attorneys fees absent a contract or statute to the contrary.” See Police Commissioner of Boston v. Gows, 429 Mass. 14, 17 (1999). The American Rule prevents people from being penalized for defending or prosecuting a lawsuit, as “the threat of having to pay an opponent’s costs might unjustly deter those of limited resources from prosecuting or defending suits.” Gows, 429 Mass. at 18, quoting Fleishmann Distilling Corp. v. Maier Brewing Co., 386 U.S. 714, 718 (1967).
Section 6F, a specific statutory exception to the American rule, is a punitive measure that is meant to discourage insubstantial and frivolous actions. Masterpiece Kitchen & Bath, Inc., 425 Mass. at 328-39; Waldman v. American Honda Motor Co., 413 Mass. 320, 323, 324 n.10 (1992). Where exceptions to the American Rule apply, the Supreme Judicial Court takes “a restrictive view of the right of a successful litigant to recover counsel fees from one who has wronged him.” Bournewood Hosp., Inc. v. Massachusetts Comm’n Against Discrimination, 371 Mass. 303, 313 (1976), citing Harrison v. Textron, Inc., 367 Mass. 540, 554 (1975). Awards of legal fees pursuant to §6F, therefore, “should be reserved for rare and egregious cases.” Gows, 429 Mass. at 18. See also U.S.M. Corp. v. Marson Fastener Corp., 392 Mass. 334, 351 n.16 (1984) (noting that special circumstances are needed to justify a fee award); George v. Coolidge Bank & Trust Co., 360 Mass. 635, 640 (1971) (“counsel fees are collectible only in exceptional cases”); accord Selfridge v. Gynecol Inc., 564 F.Sup. 57, 58 (D.Mass. 1983) (granting legal fees to the defendants when the conduct of plaintiffs counsel manifested “an appalling degree of irresponsibility”).[7]
Granting awards only in rare cases prevents §6F from becoming “an indirect method of supplanting the usual rule that taxable costs are deemed full compensation for the expenses of litigation.” Massachusetts Adventura Travel Inc. v. Mason, 27 Mass.App.Ct. 293, 299 n.8 (1989). Accordingly, judges should consider the possible chilling effect of a decision to award attorneys fees before making a discretionary finding pursuant to §6F. Hahn v. Planning Bd. of Stoughton, 403 Mass. 332, 337 (1988) (holding that there was no danger in chilling appeals of novel theories of law when affirming fee award that was based on a party’s irrelevant and immaterial claims), aff'd after remand, 406 Mass. 1001 (1989).
A. PDC-E1 Paso’s claims against the consortium were not wholly insubstantial and frivolous under G.L.c. 231, §6F.
A claim is wholly insubstantial and frivolous when it lacks a substantial basis in fact or law. Compugraphic Corp. v. DiCenso, 11 Mass.App.Ct. 1020, 1020 (1981). In contrast, claims raising questions that are “subject to debate” are not wholly insubstantial or frivolous. Datacomm Interface, Inc. v. Computerworld, 369 Mass. 760, 781 (1986), citing G.L.c. 231, §6F. Thus, a lower court ruling in favor of a claimant indicates that the claimant’s argument is not wholly insubstantial under §6F, even if that argument is later reversed on appeal. Pottle v. School Comm of Braintree, 395 Mass. 861, 867 n.7 (1985). Additionally, claims that present a “novel or unusual argument or principle of law” are not wholly insubstantial or frivolous. G.L.c. 231, §6F.
A claim lacks a substantial basis in law when its elements are unsupported. In Lewis, the court granted a §6F motion when a party’s claims were “without even a colorable basis in law” and “precisely the species of *22 transparent defense to which a party should not be required to respond.” 391 Mass. at 526. See also Fredkin v. Camelot, 2005 WL 2875370 at *2 (granting §6F motion when plaintiff made “no showing” as to several elements of two causes of action, and “failed to [meaningfully] address” the defendant’s motion for judgment on another claim); Katz v. Savitsky, 10 Mass.App.Ct. 792, 797 (1980) (granting §6F motion when counsel filed “groundless” motion to disqualify in response to a deposition notice). Claims also lack a substantial basis in law when they are supported solely by arguments that are irrelevant to the central issue of the case. Hahn, 403 Mass. at 337 (granting §6F motion as to plaintiffs motions to amend and to reconsider because plaintiffs theories were not important to his claims).
Additionally, a claim is wholly insubstantial and frivolous when a party fails to provide factual support. In Katz, the Supreme Judicial Court granted a §6F motion when the plaintiff “was unable or unwilling to give a coherent explanation of the contractual relationship.” 10 Mass.App.Ct. at 797. The Supreme Judicial Court was left to conclude that “neither the plaintiff nor his counsel had had any reason to believe that any of the defendants was even aware of any contractual relationship” when the action was brought. Id. Claims also lack a substantial basis in fact when they are supported by false or discredited evidence. The Court’s decision to grant the §6F motion in Katz was bolstered by the plaintiffs false testimony that the statute of limitations did not apply to preclude his claim. Id.; see also Maiskiewicz v. LeTourneau, 12 Mass.App.Ct. 880, 881-82 (1981) (upholding the trial court’s ruling for defendant on §6F motion when the plaintiffs claims were factually unsupported because its evidence was not credible).
PDC-El Paso’s claims were not wholly insubstantial and frivolous because they had a substantial basis in fact and law. PDC-El Paso contended that the July 1998 document was enforceable and expressed an intent to be bound to enter into an EPC contract and supply a turnkey power plant. First, PDC-El Paso argued that the parties agreed' to the essential terms of the Meriden Project in the document. Second, it argued that the parties intended the document to be an enforceable preliminary agreement to be enforced like a contract. Although this Court, and the Appeals Court, ultimately decided against PDC-El Paso, the plaintiffs’ claims did have a substantial basis in law and fact. PDC-El Paso’s argument regarding the document is the core of its claim for breach of contract, breach of the covenant of good faith and fair dealing, and contractual interference. PDC-El Paso Meriden, LLC, No. 04-P-1452, at 6 n.8. Therefore, this Court should deny the defendants’ §6F motion on these claims.[8]
Where parties intend to be bound before execution of a formal contract, they can only be bound if they agree to the basic terms of the undertaking. PDC-El Paso Meriden, LLC, No. 04-P-1452, at 5; Geo. V. Wilcox, Inc. v. Shell E. Petroleum Prod., Inc., 283 Mass. 387, 390 (1933). The July 1998 document however, did not itself contain all the material terms detailing how to engineer, procure, and construct the Meriden Plant. PDC-El Paso Meriden, LLC, No. 04-P-1452, at 6; PDC-El Paso Meriden, LLC, Civil No. 996016BLS, at 19. PDC-El Paso argued that the parties intended to be bound by the document because it incorporated a price, scope of supply, performance guarantees, and a schedule from another EPC contract. (Pls.’ Opp to Alstom’s Mot. for Counsel Fees, Costs, & Expenses Under Mass. G.L.c. 231, §6F, at 5 (hereinafter “Pls.’ Opp. to Alstom’s §6F Mot.”); Pls.’ Summ. J., Ex. PX 157.) PDC-El Paso argued that the parties incorporated these terms in section 1.1 of the Agreement, which provides that “The Meriden Project commits to enter into an EPC contract with the Consortium . . . with generally the same terms as the Agawam EPC Contract. . .”
The Appeals Court rejected PDC-El Paso’s argument because the document’s reference to the Agawam Contract was insufficiently specific. PDC-El Paso Meriden, LLC, No. 04-P-1452, at 4, citing Chicopee Concrete Serv., Inc., 389 Mass. 476, 478 (1986). The existence and reference to the Agawam EPC contract, however, provided a coherent explanation of how the parties theoretically could have proceeded with the Meriden Project. The Agawam EPC contract contained the necessary details, and might have been successfully incorporated if the parties used a more specific reference. PDC-El Paso’s theory of incorporation was relevant to its claim that the contract contained essential terms, unlike the irrelevant theories presented in Hahn, 403 Mass. at 337. This basis in fact and law is distinct from those that fail to give a coherent explanation, lack a colorable basis in law, or are supported by no evidentiary showing. See Lewis, 391 Mass. at 526; Fredkin, 2005 WF 2875370, at 2 (2005); Katz, 10 Mass.App.Ct. at 797. The issue of incorporation was at least subject to debate. Datacomm Interface, Inc., 369 Mass. 760, 781. Granting BVCI’s and Alstom’s §6F motions would thus have a chilling effect on parties bringing plausible arguments that are less likely to prevail. See Gows, 429 Mass. at 18.
PDC-El Paso’s second argument, that the parties intended the document to bind them to completing the Meriden Project, was also supported by a substantial basis in law and fact. PDC-El Paso admitted that the parties anticipated a more formal writing when entering into the document (an EPC contract),[9] even though mere agreements to agree may impose no obligation on a party. PDC-El Paso Meriden, LLC, No. 04-P-1452, at 5, citing Rosenfleld v. U.S. Trust Co., 290 Mass 210, 217 (1935). Agreements that anticipate a formal writing, however, are enforceable if parties “have agreed upon material terms, or upon the ‘formulae and procedures’ that will provide the material terms at some future date.” PDC-El Paso Meriden, LLC, No. 04-P-1452, at 5, citing Lafayette Place Assocs. v. Boston Redev. Authy., 427 Mass 509, 521 (1998). Thus, PDC-El Paso might have *23 prevailed if the document successfully incorporated the material terms detailing how to engineer, procure, and construct the Meriden Plant. See PDC-El Paso Meriden, LLC, No. 04-P-1452, at 6; PDC-El Paso Meriden, LLC, Civil No. 996016BLS, at 19.
In support of its argument, PDC-El Paso presented evidence that it believed both parties were bound to a contract that listed all essential terms. While deposed members of PDC-El Paso admitted that the document was not an EPC contract, they did think it was a firm commitment “to enter into an EPC contract as stated in the Agreement and supply a turnkey power plant on those terms.” (Pls.’ Summ. J., Ex. PX 108; see also Pls.’ Summ. J. Exs. PX 85, 101, 108; Mem. in Supp. of Alstom Power, Inc. & Alstom Power N.V.’s Mot. for Counsel Fees, Costs, and Expenses, at 5, 6-7 (hereinafter “Alstom’s §6F Mot.”) PDC-El Paso also presented unrebutted evidence that preliminary agreements, which the document attempted to achieve, were standard in the industry. (Alstom’s §6F Mot., at 5; Pls.’ Summ. J., Ex. PX 157.) That this Court did not find that the document incorporated other EPC contracts, and thus found it to be lacking essential terms, does not transform PDC-El Paso’s argument into one that is wholly insubstantial or frivolous.[10]
Unlike claimants who were made to pay fees under §6F, PDC-El Paso did not present false or discredited evidence. Its contention that BVCI repudiated the contract when it demanded a side adder of $19 million was not knowingly false because this issue was never resolved before PDC-El Paso filed suit. The consortium never established that the parties fully resolved this dispute, and PDC-El Paso presented evidence supporting its contention that the document fixed the contract price at approximately $217 million. PDC-El Paso appropriately asserted that Alstom refused to deliver turbines at the contracted-for time because Alstom only agreed to do so in derivation of price and quality terms set in the allegedly binding Agreement. (Alstom’s §6F Mot., at 8.)
Finally, PDC-El Paso appropriately contended that the Meriden power plant would have grossed $448 million within the first 20 years of its operation. (Pls.’ Second Am. Compl. at 1; Pls.’ Att’y Letter Dated 11/13/2006, Attach. 1). PDC-El Paso did not allege that this represented its lost profits, but merely estimated the size of the plant’s projected gross revenues. (Pls.’ Second Am. Compl. at 1; Pls.’ Opp. to Alstom’s §6F Mot. at 8.) PDC-El Paso, through the report of its expert, revealed that the plant would yield a net $16.3 million loss during its first 20 years, substantiated the $448 million in gross earnings, and estimated the plant’s net $51.2 million gain after 40 years. (Alstom’s §6F Mot. Binder, Ex. 6, LaCapra Report.) It is inconsequential that PDC El-Paso earned a $24.5 million profit from selling the rights to the Meriden Project after the consortium allegedly breached the document. PDC El-Paso presented testimony from Larry Keller-man that their business was to sell power plants after they were constructed. (Pls.’ Att’y Letter Dated 11/13/2006, Attach. 2.) PDC-El Paso’s allegedly false allegations coincided with its interpretation of the document as binding on all parties. Consequently, PDC-El Paso’s contentions are far from baseless or false, unlike the false allegations presented by claimants who put forth no reasons to substantiate their claims. Katz, 10 Mass.App.Ct. at 797; Maiskiewicz, 12 Mass.App.Ct. at 881-82.
B. PDC-El Paso’s claims against the consortium were made in good faith under G.L.c. 231, §6F.
Attorney fees pursuant to §6F can only be granted if there is an evidentiary showing and explicit judicial finding that the claims were not advanced in good faith. Bartlett v. Greyhound Real Estate Finance Co., 41 Mass.App.Ct. 282, 292 (1996); Hahn, 403 Mass. at 337. Evaluating good faith entails a subjective and objective injury. Massachusetts Adventura Travel, Inc., 27 Mass.App.Ct. at 297. Massachusetts courts consider the claimant’s subjective belief in the validity of his claim, and whether that belief is reasonable, when evaluating if a claim was made in good faith. Massachusetts Adventura Travel, Inc., 27 Mass.App.Ct. at 297.
A trial judge may reasonably infer a claimant’s absence of good faith in litigation from circumstances such as “the claimant’s experience and training, his knowledge of relevant circumstances as found by the trial judge, the extent to which advice and preparation of counsel was available to him, and the quality and significance of [its] grounds advanced for opposing an award under §[ ]6F." Id. at 299; see also Fredkin, 2005 WL 2875370 at *2 (finding a lack of good faith where the plaintiff was a sophisticated businessman that admitted that he was motivated by self-interest in the underlying transaction). Courts have found an absence of good faith when a party knew or should have known that its claim “lacked any substantial factual or legal support” or was “groundless.” Compugraphic Corp., 11 Mass.App.Ct. at 1020-21; see also Katz, 10 Mass.App.Ct. at 797 (finding a lack of good faith when plaintiff should have known that his claim was groundless).
Generally, and for purposes of §6F, good faith implies “an absence of malice, an absence of design to defraud or to seek an unconscionable advantage.” Hahn, 403 Mass. at 337.[11] Consequently, courts have often found an absence of good faith on §6F inquiries under such circumstances. In Miaskiewicz, the claimant acted without good faith when he willfully lied under oath in support of a claim that was so “baseless, false and wasteful” that it offended the court’s dignity. 12 Mass.App.Ct. at 881. See also Compugraphic Corp., 11 Mass.App.Ct. at 1021 (holding that there was a lack of good faith where the claimant’s motions were dilatory, and arguments underlying the counterclaim and appeal were frivolous); Pirie, 43 Mass.App.Ct. at 911 (holdingthat party did not pursue claim in good faith solely because *24 he stated that even though he would probably lose the case, he would “take [the defendant] through every legal process” to deplete its resources so that it “won’t be able to afford what [it] want[s] to do” upon prevailing).
In Massachusetts AdventuraTravel the Appeals Court based its decision that plaintiffs claim was not pursued in good faith solely on a finding that it was essentially unsupported by the evidence. 27 Mass.App.Ct. at 299. However, the Supreme Judicial Court has been “reluctant” to find a lack of good faith absent malice. Hahn, 403 Mass. at 338. In Hahn, the SJC refused to find an absence of good faith in a claimant’s §6F claim for costs related to a claimant’s applications for further and direct appellate review because these actions did not reflect “ill will or insincerify.” Id. at 338.
This Court finds, in its discretion, that there is no evidence upon which to base an explicit judicial finding that PDC-E1 Paso’s claims were not advanced in good faith, as is required under §6F. See Bartlett, 41 Mass.App.Ct. at 292; Hahn, 403 Mass. at 337. There is insufficient reason that PDC-E1 Paso should have thought its claims lacked support because it has substantiated them in fact and law. For this reason, PDC-E1 Paso’s allegedly false claims against the consortium were merely a part of its supported, although ultimately losing, argument. Further, BVCI and Alstom cannot adequately support their contentions that PDC-E1 Paso maliciously pursued its claims in order to seek an unconscionable advantage in this litigation.
Additionally, PDC-E1 Paso’s sophistication in the area of power plant production does not necessarily indicate that it should have known its claims were insubstantial or frivolous. This factor can be taken into account along with other subjective and objective considerations, which, in this case, do not indicate the type of rare and egregious case which §6F is meant to discourage. Massachusetts Adventura Travel, Inc., 27 Mass.App.Ct. at 299.
ORDER
For the foregoing reasons, Black & Veatch Construction, Inc.’s Motion for Reasonable Attorneys Fees and Costs, Paper #237, and Defendant Alstom Power, Inc.’s and Alstom Power, N.V.’s Motion for Counsel Fees, Costs and Expenses, Paper #241, are each DENIED.
The parties are directed to submit memoranda and such other supporting materials as they may choose directed to the alternative requests in the memoranda of BVCI and Alstom for those “taxable costs” of BVCI of $121,562.76 and of Alstom of $313,824.08. Such memoranda and other materials shall be filed on or before January 19, 2007. Upon receipt thereof, the Court will determine, if requested by any party, whether further oral argument is necessary.

The Appeals Court’s decision, referred to at 66 Mass.App.Ct. 1101 (April 2006), is an unpublished memorandum pursuant to its Rule 1:28. The SJC later denied further appellate review. 447 Mass. 1103 (2006).

The latter involving the amount of fees and costs sought, is not a small issue. Alstom seeks an aggregate amount of $ 10,338,777.29 and BVCI weighs in at $ 1,300,860.50 for fees and $381,172.34 in costs.

The word “agreement” is used by PDC-E1 Paso in the complaint. It is quoted here by the Court as alleged in the complaint, but was not intended to have any legal effect, but merely to advise readers of PDC-E1 Paso’s claim.

General Laws c. 231, §6F provides, in relevant part: "Upon motion of any party in any civil action in which a finding, verdict, decision, award, order or judgment has been made by a . . . justice . . . , the court may determine, after a hearing, as a separate and distinct finding, that all or substantially all of the claims, defenses, setoffs, or counterclaims, whether of a factual, legal or mixed nature, made by any party who was represented by counsel during most or all of the proceeding, were wholly insubstantial, frivolous and not advanced in good faith ... If such a finding is made with respect to a party’s claims, the court shall award to each party against whom such claims were asserted an amount representing the reasonable counsel fees and other costs and expenses incurred in defending against such claims.”

Note, however, that the Supreme Judicial Court had repeatedly “treated [§6F’s] purposes sympathetically in order that its policies may be effectuated.” Masterpiece Kitchen & Bath, Inc., 425 Mass. at 328 (holding that §6F applies to appeals).

Apart from its argument that the document could not have been binding, BVCI and Alstom have not presented reasons why PDC-E1 Paso’s other claims against the consortium were wholly unsubstantial, frivolous, and not advanced in good faith. Accordingly, the Court should not grant BVCI’s and Alstom’s §6F motions as they pertain to PDC-E1 Paso’s claims for misrepresentation, violating G.L.c. 93A, and violating the Connecticut Unfair Trade Practice Act.

PDC-E1 Paso alleged in its complaint that, through the document, the Consortium agreed to design and build the Meriden plant at the price contemplated therein. It did not specifically allege that the document was an EPC contract. In contrast, in its motion opposing defendants’ motions for summary judgment, it argued that the document was a “preliminary agreement” that acted as a “binding and enforceable contract to enter into an EPC contract on the terms stated and to supply a turnkey power plant on those terms.” Pls.’ Opp. to Defs.’ Mots. for Summ. J. at 10.

Further, the Appeals Court held that the parties’ continued negotiations indicated that they did not intend their contract to bind them to do anything but negotiate. PDC-El Paso Meriden, LLC, No. 04-P-1452, at 5 n.6, citing Air Technology Corp. v. General Elec. Co., 347 Mass. 613, 624 n.12 (1964).

In Hahn, the Supreme Judicial Court affirmed a single justice’s ruling that a plaintiff did not pursue a claim in bad faith. 403 Mass. at 337-38. ‘The single justice’s reference to ‘bad faith’ rather than the ‘not advanced in good faith’ language in G.L.c. 231, Section 6F, [was] not crucial,” because the judge was actually applying the same standard, and the court proceeded to conduct a de novo review. Id. at 338 n.7. Massachusetts courts have described bad faith as importing “a dishonest purpose of some moral obliquity,” implying conscious wrongdoing, and breaching “a known duty through some motive of interest or ill will." Massachusetts Adventura Travel 27 Mass.App.Ct. at 296, citing Spiegel v. Beacon Participations, Inc., 297 Mass. 398, 416-17 (1937).