NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

SJC-11789

GARY WONG  vs.  GEORGE V.H. LUU & others[1]
(and seven consolidated cases[2]).[3]


Suffolk.     March 3, 2015. - July 15, 2015.

Present:  Gants, C.J., Spina, Cordy, Botsford, & Duffly, JJ.


Practice, Civil, Attorney's fees.  Attorney at Law, Conduct prejudicial to administration of justice.



Civil action commenced in the Superior Court Department on August 17, 2009.

---

[1] Super 88 Allston, LLC; Hong Kong Supermarket, Inc.; Hong Kong Supermarket Holding Corp.; Hong Kong Supermarkets of Mass., LLC; Hong Kong Supermarkets of Allston, LLC; Jeffrey Wu, also known as Myint J. Kyaw; and Lucky Star Elmhurst, LLC.

[2] Wincent International, Inc. vs. George V.H. Luu & others; Tin World, Inc. vs. Super 88, LLC, & others; Hop Lee Trading Co., Inc., & others vs. Wincent International, Inc., & others; Cheng Liu & others vs. Winvest LLC & others; Cheng Lee Co., Inc. vs. Super 88 Allston LLC & others; Gary Wong vs. Haymarket Capital, LLC, & others; Chang & Son Enterprises, Inc., & others vs. Super 88 Super Market II, Inc., & others.

[3] The appellant, Attorney Richard Goren, was allowed to intervene in these cases solely for the purpose of appealing the award of sanctions against him that is at issue in this appeal.

A motion for sanctions, filed on March 29, 2011, was heard by D. Lloyd Macdonald, J.

The Supreme Judicial Court granted an application for direct appellate review.


Michael P. Angelini for Richard Goren.
Cynthia Mark (Anne R. Sills with her) for Yu Cheng Liu & another.
Gregory P. Turner, for Hop Lee Trading Co., Inc., & others, was present but did not argue.
Vy Truong, for Tin World, Inc., was present but did not argue.
Debra Squires-Lee & Jessica Gray Kelly, for Boston Bar Association, amicus curiae, submitted a brief.


GANTS, C.J.  The issue presented in this case is the scope of a judge's authority under the inherent powers of the court to order an attorney for a party to pay the other parties' attorney's fees as a sanction for the attorney's misconduct where that sanction is not authorized by any statute or court rule, and where the attorney has not violated a court order or rule of procedure.  We conclude that a judge may exercise the court's inherent power to sanction an attorney with an assessment of attorney's fees only if the attorney has engaged in misconduct that threatens the fair administration of justice and the sanction is necessary to preserve the judge's authority to administer justice.  Because we conclude that the judge abused his discretion in exercising the court's inherent powers to sanction the attorney under the circumstances in this case, and that the attorney's alleged misconduct was more

appropriately addressed by a referral to the Board of Bar Overseers (board), we reverse the judge's order imposing sanctions.[4]

Background. Attorney Richard Goren was the attorney for Cheng Lee Co., Inc. (Cheng Lee), one of the plaintiffs in a complex litigation in the Superior Court arising out of the attempted sale of three supermarkets in the Boston area (the Super 88 stores). Eight cases, later consolidated, were brought by three groups of plaintiffs: the "trade creditors" (vendors of the Super 88 stores, including Cheng Lee, the "Hop Lee" plaintiffs, and the "Tin World" plaintiffs); the "workers" (former employees of the Super 88 stores asserting class action wage claims); and the "asset purchasers" (aggrieved attempted purchasers of the Super 88 stores). The cases were brought against three groups of defendants: the "Super 88 defendants" (corporate entities and principals of the Super 88 stores); the "Hong Kong Supermarket defendants" (the prospective purchasers of the Super 88 stores); and the "lenders" (financial institutions that lent money to the Super 88 defendants).

On December 10, 2010, counsel for all parties in the litigation appeared in court for a conference pursuant to Mass. R. Civ. P. 16, as amended, 466 Mass. 1401 (2013), and for an

---

[4] We acknowledge the amicus brief submitted by the Boston Bar Association.

omnibus motions hearing.  With the judge's permission, counsel used the occasion instead to engage in substantive settlement discussions.  They reported to the court that a potential settlement framework had been reached, and they requested that the conference be continued so that they could further develop the framework.  The judge allowed the continuance and encouraged counsel's efforts.  The conference was continued a second time on the representation by counsel that substantial progress was being made towards settlement.  The judge scheduled March 18, 2011, as the date on which counsel would report the terms of a final settlement to the court or proceed with the conference and hearing.

Prior to March 18, the parties had reached a final settlement agreement, which they had intended to sign and file with the court.  Under the terms of the settlement agreement, the lenders agreed to release their claims to a security interest in the Super 88 store located in the Dorchester section of Boston in exchange for a release of the claims of all plaintiffs in the consolidated cases.  From the proceeds of the sale of the Dorchester store to one of the asset purchasers in settlement of its claims, Cheng Lee was to receive $650,000; the Hop Lee plaintiffs were to receive $264,000; the Tin World plaintiffs were to receive $313,395; and the workers were to receive $950,000, but $500,000 would not be paid for six months.

This would leave a balance of approximately $7 million for the lenders from the sale of the other two Super 88 stores.

On March 18, however, counsel appeared in court and announced that there had been a "breakdown in the settlement discussions" because, days earlier, they had learned of a solicitation letter that Goren had sent out the week before to 106 unsecured creditors of the Super 88 defendants that had been identified on a 2009 bankruptcy schedule.[5]  Most of the recipients were nonparty creditors, but four of the Hop Lee plaintiffs also received the letter, as did one nonparty creditor who was represented by the attorney for Tin World.[6]  In the letter, which was printed on the stationery of Goren's law firm at the time, Bodoff & Associates, P.C. (Bodoff), Goren explained that he "represent[ed] an unsecured trade creditor of Super 88 and [was] about to conclude an agreement whereby [his] client will recover 100 cents on the dollar in a settlement with various parties."  The letter went on to request that the recipient complete an enclosed form if the recipient were "interested in seeking to recover [its] unpaid Super 88 invoices on a contingent fee basis."  The letter further explained, "If

---

[5] The Super 88 defendants had filed for bankruptcy in 2009, but the bankruptcy petitions were dismissed.

[6] Goren later stated that the letter was sent to the Hop Lee plaintiffs through "error and inadvertence."

there is sufficient interest generated by unpaid creditors, we will bring a lawsuit against certain parties on the creditors' collective behalf . . . ."[7]  The letter both began and concluded with a request that the recipient treat the inquiry as confidential.[8]

The Tin World and Hop Lee plaintiffs and the Super 88 defendants moved for sanctions against Goren on the grounds that he had violated the rules of professional conduct[9] and had interfered with the "effective administration of justice."[10]  At

---

[7] The letter further stated that "[t]he contingency would be for 50% plus a proportionate share of costs and no settlement for less than 90% of aggregate face value could be made without the approval of a majority in interest of the claimants and the party financing the litigation."

[8] In a subsequently filed affidavit, Goren stated that "[a] number of creditors responded" to this inquiry, and that he informed them that he was "not advising, nor agreeing then to represent" them, but "was gathering information for [a] third party who was considering financing the prosecution of their claims and that upon resolution of [his] current representation [of Cheng Lee], [he] would be in touch with them."

[9] The "Tin World" plaintiffs and "Hop Lee" plaintiffs specifically claimed that Goren had contacted parties represented by counsel (including the four Hop Lee plaintiffs who received the solicitation letter) in violation of Mass. R. Prof. C. 4.2, as amended, 437 Mass. 1303 (2002), and that he had solicited clients with interests adverse to his client, Cheng Lee Company Co., Inc. (Cheng Lee), in violation of Mass. R. Prof. C. 1.7, as amended, 430 Mass. 1301 (1999). The Super 88 defendants also claimed that Goren had "engag[ed] in bad faith negotiations over the course of three months with all counsel in these consolidated actions" in violation of the preamble to the rules of professional conduct.

[10] The moving parties requested that sanctions also be imposed on Bodoff & Associates, P.C. (Bodoff), and the Super 88

the sanctions hearing on April 8, the various counsel explained why Goren's solicitation letter had derailed the settlement process. They noted that the total amount of the claims exceeded the aggregate sale prices of the three supermarkets, and that everyone understood that it was in the interest of their clients that "outsiders to the consolidated actions not be invited in on what was a finite pot of money." As a number of the parties had agreed to compromise their claims in various ways for the sake of reaching a settlement, the prospect of additional claims caused them to renege, because they had only agreed to compromise their claims on the assumption that they "were wrapping up all of the litigation," and because "a potential involuntary bankruptcy" could have been triggered if other "potential creditors [were] alerted to the false assumption that there's a pot of money out there that's just waiting to be tapped."[11] The parties had never entered into a confidentiality agreement, and there was no confidentiality provision in the proposed settlement agreement, but counsel explained that "there was no real need for a [c]onfidentiality

---

defendants requested that sanctions also be imposed on Goren's client, Cheng Lee.

[11] Counsel also contended that Goren's statement that his client had received "100 cents on the dollar" contributed to the derailment of the settlement because it caused the Tin World plaintiffs -- who had only received "69 cents on a dollar" -- to insist on receiving more money.

[a]greement because it was in all of [their] own clients' interest to keep this as quiet as possible."[12]

Goren replied that sanctions were unwarranted because he had not violated any ethical rule or court order or committed a breach of any agreement with the other parties, and because jurisdiction for sanctioning attorneys for ethical violations lies with the board. He also denied that he had had any intention to "torpedo" the settlement.

The judge ordered Goren to "reimburse all parties in the consolidated cases their necessary and reasonable attorney[']s fees and expenses incurred from December 10, 2010 through April 8, 2011 in connection with the effort to settle the litigation and respond to the solicitation by Attorney Goren."[13] The judge quoted the following passage from Beit v. Probate & Family Court Dep't, 385 Mass. 854, 859-860 (1982):

---

[12] Counsel also noted that although "confidentiality was discussed," the negotiations involved a class action suit and "confidentiality would actually be difficult in this circumstance."

[13] Originally, the judge also ordered that Cheng Lee be jointly and severally liable for the parties' attorney's fees.However, the judge later vacated that part of the order after he was persuaded, based in part on an affidavit from Goren, "that Cheng Lee intended that the settlement go through as negotiated by the parties and that Cheng Lee did nothing to encourage Goren's solicitation." The judge stated that "[o]n the expanded record, it would be unjust for Cheng Lee to be sanctioned for conduct that directly harmed Cheng Lee's own interests." The judge did not order sanctions against Bodoff.

"Judges have the inherent power to do whatever may be done under the general principles of jurisprudence to insure [the integrity of the judicial process]. . . . Simply stated, implicit in the constitutional grant of judicial power is authority necessary to the exercise of . . . [that] power. . . . [E]very judge must exercise his inherent powers as necessary to secure the full and effective administration of justice. . . . Exercising this power, a judge may impose reasonable court costs on an attorney who . . . delays the adjudication of legitimate claims and defenses, unnecessarily increases clients' litigation expenses, and squanders limited judicial resources. A judge cannot condone behavior that causes precious time to be wasted away while the court, parties, court personnel, and witnesses [otherwise diligently conduct themselves]" (quotations, citations, and footnotes omitted).

The judge noted that, "[i]n a technical sense," he did not have jurisdiction to rule on compliance with the rules of professional conduct, but he concluded that the content of the rules "may inform the [c]ourt's assessment of whether Goren acted unreasonably such as to have impeded 'the full and effective administration of justice' and 'delay[ed] the adjudication of legitimate claims and defenses . . . and squander[ed] limited judicial resources.'" The judge found that "[u]nquestionably, Goren did so."

The judge stated that he had "placed on hold [his] earlier effort to move the consolidated cases to prompt trial on counsel's representation in December, joined by Goren, that they had agreed on a settlement framework but that time was needed to finalize it." He did so in reliance "on the good faith of all counsel, as officers of the [c]ourt, in representing to the

[c]ourt that they were engaged diligently in the global settlement effort." He found that "but for one participant," impliedly Goren, "they were in fact so engaged."

He found that the settlement negotiations had been "conducted in confidence because of the parties' awareness that if additional claimants appeared, the finite settlement fund would be further diluted and (if a critical mass of new claims were filed) a bankruptcy petition could be triggered that would have left all the plaintiffs without a practical remedy." He also found that, in these circumstances, "the very act of solicitation and its communication of the prospect of a recovery by third parties breached the assumption of confidentiality, which was central to the prospect of achieving settlement."

The judge found that Goren "appeared to have . . . violat[ed]" Mass. R. Prof. C. 4.2, as amended, 437 Mass. 1303 (2002), by soliciting five creditors that Goren knew or should have known were already represented by counsel for the trade creditors.[14] He further found that Goren "was subject to" paragraph 2 of the preamble to the rules of professional conduct

---

[14] Rule 4.2 of the Massachusetts Rules of Professional Conduct, as amended, 437 Mass. 1303 (2002), provides: "In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so."

and that his "conduct was fundamentally dishonest toward his co-counsel and a breach of the core professional duty of good faith and fair dealing with other counsel."[15]  The judge also found that Goren's conduct "was a fundamental breach of his duty of candor to the [c]ourt," in violation of Mass. R. Prof. C. 3.3, 426 Mass. 1383 (1998), but he did not specify how Goren had committed a breach of this duty, or which subsection of rule 3.3 (a) Goren had violated.[16,17]

The judge further concluded that "[t]he [c]ourt has been materially prejudiced" by Goren's conduct, writing:

> "The impact of Goren's conduct on the administration of justice, the [c]ourt's most immediate concern, has been stark.  The progression of the consolidated cases to a fair and prompt disposition has been obstructed.  Three months

---

[15] Paragraph 2 of the Preamble to the Massachusetts Rules of Professional Conduct, 426 Mass. 1303 (1998), provides, in relevant part:  "As a representative of clients, a lawyer performs various functions. . . .  As negotiator, a lawyer seeks a result advantageous to the client but consistent with requirements of honest dealing with others."

[16] Rule 3.3 (a) of the Massachusetts Rules of Professional Conduct, 426 Mass. 1383 (1998), which was the rule in effect on the date of the judge's order, provided that a "lawyer shall not knowingly . . . (1) make a false statement of material fact or law to a tribunal; (2) fail to disclose a material fact to a tribunal when disclosure is necessary to avoid assisting a criminal or fraudulent act by the client . . . ; (3) fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel; or (4) offer evidence that the lawyer knows to be false . . . ."

[17] The judge made no findings regarding the allegation by the moving parties that Goren had violated Mass. R. Prof. C. 1.7.

of diligent and expensive lawyers' time has been wasted. And the assumption on which the [c]ourt relied in staying the cases has been shown to have been based on a false premise."

In addition to allowing in part the motions for sanctions and ordering sanctions against Goren, the judge referred a copy of his order to the board for its review.

Pursuant to the judge's order, counsel involved in the settlement negotiations filed affidavits detailing their attorney's fees. After a nonevidentiary hearing addressing those filings, the judge ordered Goren to pay sanctions totaling $239,928.40 to counsel for the parties engaged in settlement negotiations (other than Cheng Lee). The judge observed:

"The magnitude of the total award gives the [c]ourt temporary pause. However, on reflection, it is a fair, reasonable and just sanction under the unusual, if not unique, circumstances of this case. Attorney Goren's callous indifference to the consequences of his unethical solicitation directly caused the predictable financial injury which the sanctions are designed to compensate. Further, not reflected in the sanctions is the impact on the [c]ourt (the resources of which are currently strained to the limit). If such impact were in fact monetized, the total sanctions would be substantially enlarged."

Goren appealed, and we granted direct appellate review.[18]

---

[18] The sanctions award against Goren is the only issue on appeal. The parties ultimately entered into a court-indorsed settlement agreement on June 11, 2014, which resolved all claims in these consolidated cases apart from the sanctions at issue in this appeal and a separate award of attorney's fees not involving Goren.

Discussion.  Massachusetts generally follows the "American rule" and denies recovery of attorney's fees unless such fee-shifting is authorized by contract, statute, or court rule.  See Police Comm'r of Boston v. Gows, 429 Mass. 14, 17 (1999) (Gows); Preferred Mut. Ins. Co. v. Gamache, 426 Mass. 93, 95 (1997).  In some circumstances, a judge in a civil case is expressly authorized by statute or rule to sanction an attorney for misconduct by requiring the attorney to pay opposing counsel's fees.  A judge may award an adverse party reasonable attorney's fees and other costs upon a finding that "all or substantially all of the claims, defenses, setoffs or counterclaims . . . made by any party who was represented by counsel . . . were wholly insubstantial, frivolous and not advanced in good faith."  G. L. c. 231, § 6F.  See Mass. R. Civ. P. 11 (a), as amended, 456 Mass. 1401 (2010) (attorney may be subjected to "appropriate disciplinary action" for wilful violation of rule requiring that attorney not sign pleading unless "to the best of his knowledge, information, and belief there is a good ground to support it; and that it is not interposed for delay").  A judge is also granted abundant authority pursuant to Mass. R. Civ. P. 37 to impose sanctions, including attorney's fees, where an attorney violates a rule of discovery or an order regarding discovery.  See Mass. R. Civ. P. 37 (b), as amended, 423 Mass. 1406 (1996).  Furthermore, even though not expressly authorized by the rules

governing contempt, we have recognized -- notwithstanding the American rule -- that "[w]here a party's conduct in a litigation constitutes contempt of court, . . . a court has discretion to award attorney's fees against the contumacious party." Gows, supra.[19]

In this case, the judge assessed attorney's fees against Goren without the authority of any statute or rule, without finding Goren in contempt of court, and in the absence of any contractual arrangement among the parties authorizing the assessment of attorney's fees. The judge in his decision imposing sanctions on Goren quoted the legal standard we declared in Beit, noting that a judge, through the exercise of the court's inherent powers, may sanction an attorney by the award of attorney's fees "as necessary to secure the full and effective administration of justice." Beit, 385 Mass. at 859, quoting O'Coins, Inc. v. Treasurer of the County of Worcester, 362 Mass. 507, 514 (1972). But the legal issue in Beit was simply whether a judge, through the exercise of inherent powers,

---

[19] See Mass. R. Civ. P. 65.3, as appearing in 386 Mass. 1244 (1982) (authorizing civil contempt proceedings for violations of "orders or judgments entered pursuant to these rules, for the violation of which civil contempt is an appropriate remedy"). See also Demoulas v. Demoulas Super Mkts., Inc., 424 Mass. 501, 571 (1997), S.C., 428 Mass. 543 (1998), and S.C., 432 Mass. 43 (2000) ("As matter of law, the awarding of attorney's fees and costs is an appropriate element of a successful civil contempt proceeding"); Matter of Vincent, 408 Mass. 527, 530 (1990) ("It is well settled that a court has the inherent power to impose sanctions for contempt of its orders").

could sanction an attorney for failing to appear at trial. That was effectively a violation of a court order, because when a judge sets a date for trial, and no continuance is sought or allowed, the judge is implicitly ordering counsel in the case to appear on that date for trial, and the counsel's failure to appear, without excuse, is plainly grounds for sanction. See Beit, supra at 859-860 ("authority to make the court's lawful orders effective" includes authority to sanction attorney for failure to appear). Goren did not violate any court order; nor did he engage in any misconduct in the court room. Therefore, this case tests the limits of a judge's inherent powers to sanction in a way that Beit did not, and requires us to revisit the scope of the court's inherent powers.

We have held that a judge has the inherent power to assess attorney's fees against a party or attorney for out-of-court misconduct that was not in violation of any court order, but only in "rare and egregious cases." Gows, 429 Mass. at 17, 19 (judge awarded attorney's fees against party who delayed compliance with lawful court order and forced prevailing party to resort to litigation to obtain compliance). The crux of the issue here is whether this is such a "rare and egregious" case.

Under Federal law, a judge may exercise the inherent powers of the court to assess attorney's fees against an attorney as a sanction for misconduct where the attorney has "willful[ly]

disobe[yed]" a court order or where the attorney has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." Chambers v. NASCO, Inc., 501 U.S. 32, 45-46 (1991), quoting Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 258-259 (1975). See Gows, 429 Mass. at 18, quoting Newman v. Piggie Park Enters., Inc., 390 U.S. 400, 402 n.4 (1968) (noting that under Federal law, "[c]onduct has been held to justify an award of attorney's fees where a party has acted 'in bad faith'"). In Chambers, the bad faith conduct that warranted the assessment of attorney's fees -- which included but went beyond violations of court orders and other misconduct that could be sanctioned under Federal statutes and rules -- was egregious. See Chambers, supra at 35-42, 58 (affirming award of almost $1 million in attorney's fees against litigant who tried "first, to deprive [the Federal District Court] of jurisdiction [by acts of fraud on the court] and, second, to devise a plan of obstruction, delay, harassment, and expense sufficient to reduce [opposing party] to a condition of exhausted compliance"). However, there appears to be no Federal rule defining what constitutes "bad faith" for the purpose of justifying a court's award of attorney's fees based on the court's inherent powers. See id. at 63 (Kennedy, J., dissenting) (only limitation on court's exercise of inherent power to impose sanctions "appears to be a finding at some point of 'bad faith,'

a standard the Court fails to define").  We recognize that "bad faith" alone is too vague a standard to establish the scope of a judge's inherent power to assess attorney's fees against an attorney who is not in violation of a court order, statute, or rule of procedure.

A judge's inherent powers -- including the inherent power to assess attorney's fees for misconduct -- must be broad enough to enable a judge to ensure the fair administration of justice. See Avery v. Steele, 414 Mass. 450, 457 (1993), quoting New England Novelty Co. v. Sandberg, 315 Mass. 739, 746 (1944) ("'[C]ourt[s] of superior jurisdiction [have] the inherent power . . . to punish those who obstruct or degrade the administration of justice' . . . [and] have wide discretion to determine when a party or attorney before them has acted in a manner warranting the imposition of sanctions"); Beit, 385 Mass. at 859.  But the exercise of these powers to assess attorney's fees must be limited to those cases where the imposition of such sanctions is necessary to preserve the court's authority to accomplish justice.  See Chambers, 501 U.S. at 64 (Kennedy, J., dissenting) ("Like all applications of inherent power, the authority to sanction bad-faith litigation practices can be exercised only when necessary to preserve the authority of the court"); O'Coins, Inc., 362 Mass. at 510, quoting Opinion of the Justices, 279 Mass. 607, 609 (1932) ("[I]mplicit in the

constitutional grant of judicial power is 'authority <u>necessary</u> to the exercise of . . . [that] power [emphasis supplied]'"). The inherent powers of the court are limited by this rule of necessity, consistent with the principle that "[b]ecause inherent powers are shielded from direct democratic controls, they must be exercised with restraint and discretion." <u>Roadway Express, Inc</u>. v. <u>Piper</u>, 447 U.S. 752, 764 (1980). See <u>Chambers</u>, <u>supra</u> at 44 ("Because of their very potency, inherent powers must be exercised with restraint and discretion").[20] In accord with this principle, a court should exercise restraint and discretion both in determining whether the rule of necessity permits the imposition of sanctions under a court's inherent powers and, where it does, in determining whether to impose a sanction in a particular case and the severity of the sanction.

The inherent powers necessary to preserve the court's authority to accomplish justice include the power to sanction an attorney for failing to comply with an order of the court and for undue delay in compliance. See <u>Sommer</u> v. <u>Maharaj</u>, 451 Mass.

---

[20] Where a court's power to impose the sanction of attorney's fees is concerned, there is an additional consideration warranting restraint, namely, the risk that the court's inherent powers might be interpreted so liberally as to create an exception to the American Rule so broad that it might in practice devour the rule. See <u>Chambers</u> v. <u>NASCO, Inc</u>., 501 U.S. 32, 45 (1991), quoting <u>Roadway Express, Inc</u>. v. <u>Piper</u>, 447 U.S. 752, 765 (1980) (court has inherent power to depart from American rule only in "narrowly defined circumstances").

615, 620-622 (2008), cert. denied, 556 U.S. 1235 (2009) ("extreme delay in payment of the judgment" warranted forfeiture of party's right to be heard); Gows, 429 Mass. at 17-19; Beit, 385 Mass. at 859-860; Commonwealth v. Rogers, 46 Mass. App. Ct. 109, 112 (1999) (upholding nominal assessment of fees against attorney for violation of court order where violation was not disruptive enough to warrant summary contempt punishment). See also Chambers, 501 U.S. at 45-46, quoting Alyeska Pipeline Serv. Co., 421 U.S. at 258, and Hutto v. Finney, 437 U.S. 678, 689 n.14 (1978) (fee shifting allowed for "willful disobedience of a court order" and where party "shows bad faith by . . . hampering enforcement of a court order"). The court's inherent powers also include the power to sanction an attorney for making knowingly false misrepresentations to the court, intentionally misleading the court, or knowingly concealing information that an attorney has a duty to provide to the court. See Chambers, supra at 46, quoting Universal Oil Prods. Co. v. Root Refining Co., 328 U.S. 575, 580 (1946) ("[I]f a court finds 'that fraud has been practiced upon it . . . ,' it may assess attorney's fees against the responsible party"); Munshani v. Signal Lake Venture Fund II, LP, 60 Mass. App. Ct. 714, 714-715, 718-722 (2004) (dismissal of party's case pursuant to court's inherent powers was warranted after party committed fraud on court by "manufacturing evidence, swearing to its authenticity, and

continuing to insist on its authenticity for more than seven months while an expert investigated the matter").  They also include the power to sanction an attorney for engaging in conduct in the court room that interferes with a judge's ability to manage the court room fairly, efficiently, and respectfully. See Chambers, supra, quoting Hutto, supra (fee shifting allowed where party "shows bad faith by delaying or disrupting the litigation"); Clark v. Clark, 47 Mass. App. Ct. 737, 743-744 (1999) (award of attorney sanctions was not improper where attorney engaged in "bombastic" behavior during trial, and walked out of court room during cross-examination of her client without permission after having been warned by court that such conduct could result in criminal contempt proceedings being instituted against her).  They also include the power to sanction an attorney for other types of misconduct, but only where the exercise of that inherent power is necessary to punish, deter, or remedy misconduct that threatens a judge's ability to ensure the fair administration of justice.  See Avelino-Wright v. Wright, 51 Mass. App. Ct. 1, 3, 5-6 (2001) (upholding attorney's fee sanction for attorney who "abused the court process" by, inter alia, "challenging the integrity of the judges and appointed experts"; "becoming so enmeshed with her client that she [had] lost her professionalism in advocating for a client"; "not attempting to exercise proper control and

guidance of her client"; and "violating the court imposed restraining order against her").

The judge in this case essentially found that Goren, by sending the solicitation letter, committed a breach of the "assumption of confidentiality" that was "central to the prospect of achieving settlement," and thereby thwarted a settlement that was on the verge of being executed, which wasted three months of attorneys' time that had been invested in negotiating the settlement, and "materially prejudiced" the court by delaying the judge's effort to move the consolidated cases towards trial. Further, although the judge recognized that he had no jurisdiction "[i]n a technical sense" to decide whether Goren had violated the rules of professional conduct, he nonetheless essentially found that Goren had violated these rules, and the judge relied on these violations to demonstrate that Goren had acted unreasonably to impede "the full and effective administration of justice." We review the judge's imposition of sanctions under the court's inherent powers for abuse of discretion. See Chambers, 501 U.S. at 55. "[A] judge's discretionary decision constitutes an abuse of discretion where we conclude the judge made 'a clear error of judgment in weighing' the factors relevant to the decision, . . . such that the decision falls outside the range of

reasonable alternatives" (citation omitted).  L.L. v.

Commonwealth, 470 Mass. 169, 185 n.27 (2014).

We know of no other case, nor has one been cited by the

parties or amicus, where a judge sanctioned an attorney pursuant

to the inherent powers of the court for conduct that resulted in

a breakdown of settlement negotiations where there was no breach

of a settlement agreement or confidentiality agreement, and no

violation of an order of the court or rule of procedure.[21]  The

fair administration of justice does not require the settlement

of a case; although the parties are free to settle their case,

their entitlement under law is to a trial, not to a settlement

in lieu of a trial.  See Bower v. Bournay-Bower, 469 Mass. 690,

701 (2014) ("art. 11 [of the Massachusetts Declaration of

Rights] safeguards an individual's right to seek recourse under

the law"); Graizzaro v. Graizzaro, 36 Mass. App. Ct. 911, 912

(1994) ("A court may appropriately urge settlement on the

_____

[21] In Strand v. Hubbard, 31 Mass. App. Ct. 914, 914-915
(1991), where the Appeals Court approved an award of attorney's
fees against a party who "provoked a needless round of
litigation by torpedoing the settlement to which she had
previously agreed," the Appeals Court was acting pursuant to its
statutory authority under G. L. c. 215, § 45, which applies only
in probate proceedings and which permits a court to award costs
and expenses "as justice and equity may require."  The holding
in that case applies only to probate proceedings.  See Matter of
the Estate of King, 455 Mass. 796, 802-805 & n.13 (2010) ("§ 45
is a special departure from the American rule . . . but one
[that is] limited to matters relating to wills, estates, and
trusts").

parties but may not refuse them access to a judicial forum to resolve their justiciable disputes").  See also Goss Graphics Sys., Inc. v. DEV Indus., Inc., 267 F.3d 624, 627-628 (7th Cir. 2001) ("If parties want to duke it out, that's their privilege").  It might be regrettable that money and time were wasted in negotiations that ultimately failed to bear fruit, but that risk is inherent in every negotiation.  Because of the risk that judges may misuse the inherent powers to pressure a party to settle a case by threatening the party with sanctions, and also because of the risk that judges will be drawn into collateral disputes regarding what occurred during settlement negotiations by parties seeking sanctions, we must scrutinize with special care any exercise of the inherent powers in the context of settlement negotiations.  Cf. Graizzaro, supra ("[A] judge must show restraint in urging settlement on the parties," and "[w]hile a judge in a civil case doubtless may play a role in settlement discussions . . . , he must be conscious to avoid use of his power to coerce settlements from recalcitrant parties" [citation omitted]).

A settlement agreement, especially in a case as complex as this, no doubt would spare the court the time and resources that would otherwise be devoted to trying the case.  But an attorney's conduct during settlement negotiations that results in the failure of those negotiations is not subject to sanctions

under the judge's inherent powers where the judge is not participating in those negotiations, because the failure of settlement negotiations does not threaten a judge's ability to ensure the fair administration of justice.[22]  Where a settlement agreement is entered into as a result of fraud or duress, the aggrieved party may challenge the lawfulness of the agreement and may potentially be awarded attorney's fees as an equitable remedy, along with the voiding of the agreement.  Cf. Warner Ins. Co. v. Commissioner of Ins., 406 Mass. 354, 360 n.7 (1990) ("settlement agreement is a private contract . . . governed by general contract law").  But where, as here, no agreement is reached, a judge's inherent powers do not authorize the judge to determine who was responsible for the breakdown of negotiations, and order the attorney responsible to pay the attorney's fees incurred by the other parties in the thwarted negotiations.

---

[22] We do not mean to suggest that a court does not have a legitimate interest in the progress of settlement negotiations. Cf. Mass. R. Civ. P. 16, as amended, 466 Mass. 1401 (2013) (identifying "possibility of settlement" as subject that "a court may in its discretion direct the attorneys for the parties . . . to appear before it" to consider at pretrial conference). Other jurisdictions have accordingly held that a court has the inherent power to order parties to attend settlement negotiations, and to sanction parties for failing to comply with such orders.  See In re Novak, 932 F.2d 1397, 1406-1407 (11th Cir. 1991); G. Heileman Brewing Co. v. Joseph Oat Corp., 871 F.2d 648, 656-657 (7th Cir. 1989).  But we note that no such order was issued in this case.

The judge here determined that Goren committed a breach of the "assumption of confidentiality" that was necessary to the entry of a settlement agreement, but where no confidentiality agreement was entered into and where confidentiality was not required by an order of the court, the inherent powers of the court are not properly exercised to sanction the breach of such an assumption.[23] The judge suggested that the breach of the "assumption of confidentiality" violated the obligation of an attorney to deal honestly with others, but the inherent powers of the court do not extend to claims that an attorney during settlement negotiations did not act honestly.[24]

The judge also found that Goren violated Mass. R. Prof. C. 4.2 by sending his solicitation letter to a few prospective

---

[23] Contrast Baella-Silva v. Hulsey, 454 F.3d 5, 7, 11-13 (1st Cir. 2006) (affirming sanction imposed by Federal District Court against party who committed breach of confidentiality clause of settlement agreement incorporated into court's judgment); Toon v. Wackenhut Corrections Corp., 250 F.3d 950, 952, 954 (5th Cir. 2001) (affirming sanction against party who committed breach of confidentiality provision of settlement agreement by filing unsealed motion to enforce settlement agreement).

[24] The judge focused on the provision in Mass. R. Prof. C. Preamble, par. 2, which provides, "As negotiator, a lawyer seeks a result advantageous to the client but consistent with requirements of honest dealing with others," and implicitly found that Goren violated that part of the preamble that calls for "honest dealing with others." But the preamble to the rules of professional conduct provides only "general orientation"; it is not itself a rule. Mass. R. Prof. C. Scope [9], 426 Mass. 1308 (1998).

clients who were already represented by counsel in settlement negotiations. The judge recognized that "[i]n a technical sense" the adjudication of an alleged violation of an ethical rule rests solely with the board and this court, and that a judge does not have jurisdiction to rule on issues of compliance.[25] But he nonetheless determined that a finding of an ethical violation may bear on the issue whether Goren impaired the administration of justice. In the circumstances of this case, we disagree. Sending a solicitation letter to a represented client in these circumstances -- even assuming it was in violation of rule 4.2 -- is not conduct that may be sanctioned through the inherent powers of the court; such sanctions were not necessary to ensure the fair administration of justice where the judge also referred the matter to the board for its consideration, and where disciplinary proceedings instituted by the board and reviewed by this court would be able to protect the interests embodied in rule 4.2.

The judge's finding that Goren committed "a fundamental breach of his duty of candor to the [c]ourt," in violation of rule 3.3, calls for separate analysis, because this rule prohibits an attorney from making a knowing false statement to a

---

[25] See S.J.C. Rule 4:01, § 1, as amended, 430 Mass. 1319 (2000) ("exclusive disciplinary jurisdiction" over lawyers practicing in the Commonwealth lies with Supreme Judicial Court and Board of Bar Overseers).

court, and it is plain that the inherent powers of the court include the authority to sanction an attorney for such misconduct, regardless of the adjudication of any complaint before the board for violation of this rule.  See Rockdale Mgt. Co. v. Shawmut Bank, N.A., 418 Mass. 596, 598 (1994) ("When a fraud on the court is shown through clear and convincing evidence to have been committed in an ongoing case, the trial judge has the inherent power to take action in response to the fraudulent conduct," and "has broad discretion to fashion a judicial response warranted by the fraudulent conduct"); Munshani, 60 Mass. App. Ct. at 718-722.  See also Chambers, 510 U.S. at 46, quoting Universal Oil Prods. Co., 328 U.S. at 580 ("if a court finds 'that fraud has been practiced upon it, or that the very temple of justice has been defiled,' it may assess attorney's fees against the responsible party").  The judge did not specify what he found to constitute this breach of Goren's duty of candor but we need not remand for such a finding, because the only finding that might support the exercise of the judge's inherent powers to sanction -- a finding that, when the attorneys represented to the judge that they were exploring settlement of the case, Goren knowingly misled the judge because Goren knew at the time that he intended to sabotage any possible settlement by sending out the solicitation letter -- is not supported by the information presented to the court.  Although

there was ample information to support a finding that Goren should have recognized that his sending of the solicitation letter put at risk the settlement agreement that he claimed in the letter he was "about to conclude" for his client, there is no information to suggest that Goren sought settlement discussions to procure delay in the litigation, knowing that he would sabotage any possible settlement.

We understand the judge's frustration that a settlement of a complex case was thwarted by Goren's desire to solicit other clients at a time when he should have known that doing so risked the settlement that had so nearly been achieved. We understand as well the parties' frustration that so much of their attorneys' time (and therefore their money) was squandered by the ultimate failure of negotiations triggered by Goren's solicitation. But the inherent powers of a judge to sanction an attorney are not so broad as to right all wrongs. They are limited to what is necessary to "vindicat[e] judicial authority." Chambers, 501 U.S. at 46, quoting Hutto, 437 U.S. at 689 n.14. See Byrne v. Nezhat, 261 F.3d 1075, 1133 n.116 (11th Cir. 2001) ("Unlike the tort law, [sanctions imposed under court's inherent powers] are aimed directly at redressing the harm suffered by the judicial system"); Mark Indus., Ltd. v. Sea Captain's Choice, Inc., 50 F.3d 730, 733 (9th Cir. 1995) ("Return of all fees and costs [was] too severe a sanction"

because "[t]he proper use of sanctions that are within the court's inherent power is to protect the court so it may adequately dispense justice," whereas "[h]ere . . . the court chose to impose what amounted to a summary malpractice penalty").[26]  Because the alleged wrongs committed by Goren did not threaten the judge's ability to ensure the fair administration of justice, we conclude that the judge exceeded the inherent powers of a court by his assessment of attorney's fees and therefore abused his discretion in doing so.[27]

---

[26] Sanctions imposed under the court's inherent powers may also serve the purpose of "mak[ing] [a] party whole for expenses caused by his opponent's obstinacy." Chambers, 501 U.S. at 46, quoting Hutto v. Finney, 437 U.S. 678, 689 n.14 (1978).  See Avelino-Wright v. Wright, 51 Mass. App. Ct. 1, 5 (2001) ("Unlike the use of the criminal contempt power, the purpose of sanctions is designed not only to punish but also to compensate the aggrieved litigant for the actual loss incurred by the misconduct of the offending party").  But it does not follow that sanctions can always be justified whenever a party is injured by an opposing party's or an attorney's misconduct.  The limiting principle of necessity means that the inherent powers of a judge may only be exercised where necessary to preserve the court's authority to administer justice.

[27] Because we conclude that the sanctions order must be reversed where the fair administration of justice was not threatened by Goren's conduct, we do not reach the issue whether Goren's conduct was in bad faith, or whether a finding of bad faith is required to assess attorney's fees under the judge's inherent powers where no court order or rule of procedure has been disobeyed.  Nor do we consider Goren's argument that he was entitled to an evidentiary hearing before sanctions could be imposed.

Conclusion.  For the reasons stated, we reverse the judge's order and subsequent amended order as they pertain to the imposition of sanctions on Goren.[28]

So ordered.

---

[28] Our reversal of the judge's order does not affect the judge's referral of the matter to the Board of Bar Overseers for its consideration.