NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-276

BHARANIDHARAN PADMANABHAN

vs.

CAMBRIDGE HEALTH COMMISSION.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Plaintiff, Dr. Bharanidharan Padmanabhan, appeals from a summary judgment in favor of the defendant, Cambridge Health Commission (doing business as the Cambridge Health Alliance) (CHA), on his remaining claims arising from the termination of his employment.[1]  We affirm.

Background.[2]  The facts are taken from the summary judgment record, viewed in the light most favorable to the nonmoving party, Padmanabhan.  Between 2007 and 2011, Padmanabhan was a

---

[1] In Padmanabhan v. Cambridge, 99 Mass. App. Ct. 332 (2021) (Padmanabhan I), we affirmed the dismissal on statute of limitation grounds of all but three claims.  The present matter is one of several in which Padmanabhan attempted to assert claims arising from the events at issue here.  See id. at 334 n.3 (2021) (listing cases).  See also Padmanabhan v. Board of Registration in Med., 101 Mass. App. Ct. 1109 (2022).

[2] We take this summary from Padmanabhan I, as well as from the facts set forth in CHA's statement of material facts and attached documents, including Padmanabhan's amended complaint.

neurologist with medical staff privileges at a hospital operated by CHA. See Padmanabhan v. Cambridge, 99 Mass. App. Ct. 332, 334 (2021) (Padmanabhan I). Following the death of one of Padmanabhan's patients, CHA undertook an investigation and peer review process of his practice. In connection with that process, CHA scheduled an October 31, 2011 "fair hearing" to determine whether Padmanabhan's medical staff privileges would permanently be revoked, in which case CHA would be required by law to report the revocation and its reasons to the Board of Registration in Medicine (board) and the National Practitioner Data Bank (Databank), an internet-based database maintained by the United States Department of Health and Human Services "containing information on medical malpractice payments and certain adverse actions related to health care practitioners, providers, and suppliers." Id. at 335 & n.10 (quotation omitted).

In the weeks preceding the October 31 hearing, Padmanabhan, represented by counsel, and CHA negotiated on multiple issues, including the upcoming fair hearing, Padmanabhan's surrender of his medical staff privileges, and the precise language that CHA would use in its report to the board and the Databank. Padmanabhan's counsel indicated that Padmanabhan would resign his privileges provided that CHA agreed to use certain language and basis codes, suggested by Padmanabhan's counsel, in the

2

Databank report.  Relevant here, Padmanabhan's counsel requested that the Databank report contain the following language:

> "In July 2011, an investigative committee reviewed the medical records of ten former patients of Dr. Padmanabhan, including seven pain patients.  The investigative committee found, based on the materials it reviewed, that Dr. Padmanabhan did not meet the standard of practice expected of a CHA physician with respect to documentation: including sufficient medical history, examination, laboratory data, diagnosis, and follow up.  Dr. Padmanabhan voluntarily resigned his medical staff privileges in October 2011."

After CHA agreed to the proposed language, counsel for Padmanabhan wrote to "confirm that Dr. Padmanabhan will be submitting a letter to CHA re:  resignation, and, as a result, the Fair Hearing scheduled for Monday, October 31, 2011 will not take place."  Upon CHA's receipt of that communication the pending fair hearing was cancelled.

On October 31, 2011, as counsel had promised, Padmanabhan submitted a letter to CHA.  Padmanabhan commenced that communication by stating "at the outset that this is not a 'resignation' letter."  However, Padmanabhan went on to state, among other things, that, "My credentials expired before the end of June 2011," he "no longer [was] a member of the CHA medical staff," and that he was "formally inform[ing] [CHA] that as of the end of June 2011, I am no longer on the medical staff at" CHA.

3

CHA informed Padmanabhan's counsel that it construed Padmanabhan's October 31 letter "as a resignation" of his medical staff privileges.  Neither counsel nor Padmanabhan responded.  CHA then submitted an "adverse action report" to the Databank using substantially the same language as Padmanabhan's counsel earlier had suggested and approved; rather than stating that "Padmanabhan voluntarily resigned his medical staff privileges in October 2011," as the parties had agreed, CHA's submitted report stated that:

> "Dr. Padmanabhan indicated that he no longer considers himself part of the [CHA] Medical Staff -- which [CHA] and his counsel are treating as a resignation/voluntary surrender effective October 28, 2011."

In addition, in the report, under a section titled "Adverse Action Classification Code(s)," CHA used the code "1635," which translated as "voluntary surrender of clinical privilege(s), while under, or to avoid, investigation relating to professional competence or conduct."  This was the same coding that Padmanabhan's counsel had requested in an email during negotiations stating "[i]t is our preference that the action code for the Board report be revised, if possible, to resignation and that the action code for the NPDB report be resignation."

Padmanabhan later challenged the action report, asserting, among other things, that he "never 'voluntarily resigned' [his]

4

privileges at CHA."  Upon review, the Secretary of the
Department of Health and Human Services (Secretary) determined
that

> "lapsing of your CHA credentials does not negate the fact
> that you were considered to have voluntarily surrendered
> your privileges while under investigation. . . .  Most
> importantly, for [Databank] reporting purposes, a
> physician's failure to renew his clinical privileges while
> under investigation is considered to be a voluntary
> surrender of privileges while under investigation."

Accordingly, the Secretary ultimately determined "the Report is
factually accurate as submitted" and "there is no basis to
conclude that the report should not have been filed or that for
agency purposes it is not accurate, complete, timely or
relevant."

In 2014 Padmanadhan, in a "sprawling fifty-six-page
complaint asserting multiple claims against multiple
defendants," Padmanadhan I, 99 Mass. App. Ct. at 333, filed this
action.  We affirmed the dismissal of all claims against
seventy-two named defendants except Padmanabhan's second
(retaliation), fourth (defamation), eighth (fraud), and
declaratory relief counts asserted against CHA.  Id. at 343-344.
Shortly after Padmanadhan I was returned to the Superior Court's
docket, a judge conducted a litigation control conference.  A
different judge (motion judge) conducted a hearing on CHA's
motion for summary judgment, after which Padmanabhan moved for
leave to file additional pleadings.  The motion judge allowed

5

CHA's motion, denied Padmanabhan's, and entered judgment for CHA. This appeal followed.

Discussion. 1. Initial matters. We first address Padmanabhan's claim that the motion judge was not impartial. That the judge allowed certain of CHA's motions or, ultimately, entered summary judgment on Padmanabhan's claims, does not by itself demonstrate bias or partiality. Clark v. Clark, 47 Mass. App. Ct. 737, 739 (1999) ("The mere fact that a party suffers adverse rulings during litigation does not establish lack of judicial impartiality"). In short, after a thorough review of the record, we conclude that there is nothing in the judge's statements, actions, or history that supports Padmanabhan's assertion that the judge either "aided and abetted public corruption" or displayed or otherwise reasonably could be perceived to harbor any partiality.

Nor are we persuaded that Padmanabhan was denied discovery before summary judgment. The order of remand in Padmanabhan I did not require the judge to order discovery or set a trial. Rather, the Padmanabhan I order partially vacated the judgment and remanded, without specification, for further proceedings on certain limited issues. Padmanabhan I, 99 Mass. App. Ct. at 344. "Case management is committed to the discretion of the trial judge, and we review the decision for an abuse of discretion." Eagle Fund, Ltd. v. Sarkans, 63 Mass. App. Ct. 79,

6

85 (2005).  The litigation control conference judge acted well within that discretion, after being informed that CHA intended to serve a dispositive motion, by setting a briefing schedule for CHA's summary judgment motion.  Padmanabhan, despite the opportunity to address the court during the litigation control conference, did not request discovery in advance of the summary judgment motion.  Had Padmanabhan thereafter been unable "for reasons stated" to present "facts essential to justify his opposition" to that motion, he could have requested a continuance to allow "deposition[s] to be taken or discovery to be had."  Mass. R. Civ. P. 56 (f), 365 Mass. 824 (1974).  Padmanabhan made no such request.

2.  <u>Summary judgment</u>.  Summary judgment is appropriate where there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law.  See Mass. R. Civ. P. 56 (c), as amended, 436 Mass. 1404 (2002); <u>Kourouvacilis</u> v. <u>General Motors Corp</u>., 410 Mass. 706, 716 (1991).  "We review a grant of summary judgment de novo."  <u>Blake</u> v. <u>Hometown Am. Communities, Inc</u>., 486 Mass. 268, 272 (2020), quoting <u>DeWolfe</u> v. <u>Hingham Centre, Ltd</u>., 464 Mass. 795, 799 (2013).

Padmanabhan argues that there are genuinely disputed issues of material fact based on his oral statement to the motion judge that he "dispute[d] every single fact in the Defendant's . . .

7

affidavit of facts."  We disagree.  After being served with CHA's motion for summary judgment, Padmanabhan submitted an opposition memorandum but he did not respond, as required, to CHA's statements of material fact.  See Rule 9A(b)(5)(iii)(A) of the Rules of the Superior Court (2017) (party opposing summary judgment motion must serve "a response to the Moving Party's Statement of Facts," stating whether a specific fact "is disputed, and, if so, cite to the specific evidence, if any, in the Joint Appendix that demonstrates the dispute").  When questioned by the motion judge, Padmanabhan responded only with a blanket denial of the facts set forth by CHA.  However, as the motion judge observed, Padmanabhan did not cite to any evidentiary material that would create a genuine dispute.  See LaLonde v. Eissner, 405 Mass. 207, 209 (1989) ("the opposing party cannot rest on [their] . . . mere assertions of disputed facts to defeat the motion for summary judgment").  Nor does he do so now.[3]  Although he argues on appeal that, with discovery,

---

[3] Indeed, although he here argues to the contrary, Padmanabhan still has not identified any material facts that may arguably, genuinely be in dispute.  While Padmanabhan asserts, for example, that he consistently denied that he "voluntarily resigned" and that he did not know of his counsel's negotiations or representations, even if we assume that such assertions are sufficient to create a dispute of fact, such disputes would not be material in the sense that those assertions, if credited, would not provide a basis for a judgment in his favor.  See notes 4, 5, infra.  See also Carey v. New England Organ Bank, 446 Mass. 270, 278 (2006) ("Only those facts that, if true,

8

he could adduce evidence sufficient to demonstrate a genuine issue of material fact, he did not timely request discovery in the trial court.

As a result, the motion judge deemed the facts set forth in CHA's statement to be without genuine dispute. In doing so the judge acted within his discretion. See Mass. R. Civ. P. 56 (e), 365 Mass. 824 (1974) (party opposing summary judgment "may not rest upon the mere allegations or denials of [their] pleading, but [their] response . . . must set forth specific facts showing that there is a genuine issue for trial"); Rule 9A(b)(5)(iii) of the Rules of the Superior Court ("each fact set forth in the moving party's statement of facts is deemed to have been admitted unless properly controverted in the manner [set] forth in this [p]aragraph").[4]

a. Retaliation. Padmanabhan alleges that CHA retaliated against him when it "intentionally shared an incorrect report with the board and the [Databank] on October 28, 2011," Padmanabhan I, 99 Mass. App. Ct. at 344, after Padmanabhan purportedly disclosed CHA's "misconduct and illegalities." The

provide a basis for a reasonable jury to find for a party are material").

[4] Even if Padmanabhan had properly responded, as the judge noted, it would have made no difference in this case because "those now-admitted facts merely cite or accurately quote [litigation-related] documents . . . whose contents cannot be disputed." Thus, because "CHA's arguments turn on the undisputed content of these Exhibits . . . analysis can focus on the documents themselves."

motion judge, reasoning that Padmanabhan was equitably estopped from raising such a claim, entered summary judgment. We agree with the judge's conclusion that the defendant was entitled to summary judgment, but we need not go down the avenue of parsing the finer points of equitable estoppel.

Like all the surviving claims, the retaliation claim is predicated on an allegation that the report shared with the board and the Databank was incorrect. See Padmanabhan I, 99 Mass. App. Ct. at 344. According to Padmanabhan, the report was incorrect only to the extent that CHA represented that Padmanabhan "voluntarily resigned" his CHA medical staff privileges. However, the Secretary, who is responsible for maintenance of the Database, specifically found CHA's statement that "Padmanabhan indicated that he no longer considers himself part of the [CHA] medical staff -- which [CHA] and his counsel are treating as a resignation/voluntary surrender" was accurate given the Secretary's construction of those words of art. Because the claim of retaliation arises from the adverse action letter and the coding, the undisputed fact that they are accurate in the eyes of the Secretary means that Padmanabhan will not be able to prove his claim of retaliation.[5] Cf. Reilly v. Associated Press, 59 Mass. App. Ct. 764, 770 (2003) ("when a

---

[5] Accordingly, we need not address CHA's alternative privilege arguments.

10

statement is substantially true, a minor inaccuracy will not support a defamation claim").

b. Defamation. The same is true of Padmanabhan's defamation claim. In order to establish a claim for defamation, a plaintiff must prove four elements: "(1) the defendant published a defamatory statement of and concerning the plaintiff; (2) the statement was a false statement of fact (as opposed to opinion); (3) the defendant was at fault for making the statement, and any privilege that may have attached to the statement was abused; and (4) the plaintiff suffered damages as a result, or the statement was of the type that is actionable without proof of economic loss." Lawless v. Estrella, 99 Mass. App. Ct. 16, 18-19 (2020). A defamation claim will not lie if the statement to which objection is taken in fact is true. See Rzeznik v. Chief of Police of Southampton, 374 Mass. 475, 482 (1978) ("truth is an absolute defense"). Therefore, CHA is entitled to summary judgment on the claim of defamation.

c. Fraud. "[A] claim for deceit (i.e., fraud) must show the defendant (1) made a false representation of material fact, (2) with knowledge of its falsity, (3) for the purpose of inducing the plaintiff to act on this representation, (4) which the plaintiff justifiably relied on as being true, to her [or his] detriment." Sullivan v. Five Acres Realty Trust, 487 Mass. 64, 73 (2021), quoting Greenleaf Arms Realty Trust I, LLC v. New

11

Boston Fund, Inc., 81 Mass. App. Ct. 282, 288 (2012). As limited by Padmanabhan I, the remaining fraud claim against CHA is based on CHA's representation in its adverse action report that Padmanabhan had resigned his medical staff privileges (as opposed to being terminated from his position). Padmanabhan I, 99 Mass. App. Ct. at 343-344. Padmanabhan's fraud claim is fundamentally without basis because it is not directed at any statement by CHA that was intended to induce reliance by Padmanabhan. In other words, the record is devoid of evidence that CHA made any misrepresentation intended to induce Padmanabhan to act in any particular manner or that he in fact relied on any alleged misrepresentation to his detriment. See Sullivan, 487 Mass. at 73. In any event, the accuracy of the representation, as reflected in the Secretary's determination that is part of the summary judgment record, would serve independently to defeat Padmanabhan's claim of fraud. Accordingly, we conclude that CHA was entitled to summary judgment on the claim of fraud.

3. Final matters. After the Padmanabhan I rescript entered, a Superior Court judge conducted a litigation control conference. In response to the judge's inquiry "what do we need to do next," counsel for CHA informed the judge and Padmanabhan that CHA intended to file a motion to dismiss on all remaining claims based on correspondence by and between CHA and

12

Padmanabhan's counsel. The judge responded that a motion for judgment on the pleadings or summary judgment might "make more sense." She asked Padmanabhan, "Dr. what do you see as being the next steps?" Padmanabhan began to discuss the factual basis for the case, observed that "it has been an incredibly long case," and addressed the time he thought necessary to respond to CHA. The judge then set a briefing schedule and a hearing date for "whatever the dispositive motion is that [CHA] is bringing."

About six weeks thereafter, Padmanabhan filed a motion for sanctions, arguing in substance that counsel, by disclosing the referenced correspondence, and by stating CHA's intent to file a dispositive motion based thereon, committed a fraud on the court and unreasonably delayed the proceedings "given that CHA . . . waited a full three (3) months before declaring its intention to file a second motion to dismiss." The judge denied Padmanabhan's motion "as unjustified in fact or law." Based on our review of the record, we discern no abuse of discretion in this ruling. See Wong v. Luu, 472 Mass. 208, 220 (2015) ("We review the judge's imposition of sanctions under the court's inherent powers for abuse of discretion").

Finally, after the hearing on CHA's summary judgment motion, Padmanabhan sought leave to file pleadings that, collectively considered, amounted to an additional opposition to CHA's summary judgment motion; one of those pleadings purported

13

to be a rule 9A response to CHA's statements of material facts. The judge denied Padmanabhan's motion. After reviewing Padmanabhan's proffered pleadings, we see nothing that was not, or at the very least could not have been, raised before hearing. We agree with the judge's conclusion that, even in his attempted, albeit untimely, response to CHA's statements of material fact, Padmanabhan paid "only lip service to the . . . requirement" that he support any purported factual disputes by specific citation to supporting record materials. Accordingly, we discern no abuse of discretion in the judge's denial of Padmanabhan's motion.[6]

Judgment affirmed.

By the Court (Rubin, Englander & Brennan, JJ.[7]),

*Joseph F. Stanton*

Clerk

Entered:  May 23, 2023.

---

[6] To the extent we have not specifically addressed any of Padmanabhan's arguments, "they have not been overlooked. We find nothing in them that requires discussion." Department of Revenue v. Ryan R., 62 Mass. App. Ct. 380, 389 (2004) (quotation omitted).

[7] The panelists are listed in order of seniority.